STATE OF INDIANA, EX REL. DAUBENSPECK, *v.* DAY.

[No. 23,508.  Filed May 27, 1919.  Rehearing denied March 31, 1920.]

1. TELEGRAPHS AND TELEPHONES.—*Stockholders.—Number of Shares One May Hold.—Provisions of Articles.*—Since, under §5794 Burns 1914, §4186 R. S. 1881, providing for the incorporation of telephone companies, the board of directors of such a corporation has power to adopt by-laws, a specification inserted in the articles of incorporation limiting the ownership and control of stock to not more than five shares to each stockholder was ineffective and without the force of a by-law.  pp. 246, 252.

2. CORPORATIONS.—*Incorporation.—By-Laws. — Power to Make.*— Where the statute confers authority to make by-laws on the board of directors, the stockholders have no power to interfere with the action of the board in this particular so long as the by-laws are reasonable and not in conflict with their vested and substantial rights, nor contrary to public policy or to the established law of the land.  p. 247.

3. TELEGRAPHS AND TELEPHONES.—*Incorporation.—Charter Regulation.—"Supplemental" Legislation.—Construction.*—The act relative to the incorporation of telephone companies, §5790 *et seq.* Burns 1914, §4181 *et seq.* R. S. 1881, is supplemental to the act governing the incorporation of manufacturing companies, and,

since the former act contains no express limitation on the owner-
ship and voting power of the stock, a specification in the articles
of incorporation of such a company limiting the rights of stock-
holders in this particular, not being responsive to statutory
requirement, does not have the force or effect of a charter regu-
lation, the stockholders' rights therein being governed by §4 of the
latter act, §5071 Burns 1914, §3855 R. S. 1881. pp. 248, 249, 251.

4.  TELEGRAPHS AND TELEPHONES. — *Incorporation.* — *Supplemental
    Legislation.*—*Construction.*—Since the act relative to the incorpo-
    ration of telephone companies, §5790 *et seq.* Burns 1914, §4181
    *et seq.* R. S. 1881, is supplemental to that governing the incor-
    poration of manufacturing companies, the two acts must be
    construed together in determining the rights of ownership and
    control of stock; but the provisions of the latter act apply only
    where the supplementary act is silent on the point involved.
    pp. 249, 250.

5.  STATUTES.—*"Supplemental" Act.*—*Definition.*—*Legislative Power.*
    —The legislature has power to enact supplemental legislation
    which is legislation—though not amendatory—that supplies a
    deficiency or adds to, or completes, legislation already in exist-
    ence without changing or modifying it. p. 249.

6.  STATUTES.—*Construction.*—*Intent.*—*Title.*—The title of an act
    may be used as an aid in determining the intent of the legislature.
    p. 249.

. From Hamilton Circuit Court; *Ernest E. Cloe,*
Judge.

Proceeding in *quo warranto* by the State of Indiana,
on the relation of George B. Daubenspeck against
Elbert H. Day and others. From the judgment ren-
dered, the relator appeals. *Reversed.*

*Frederick Van Nuys, Elias D. Salsbury* and *Gentry
& Campbell,* for appellant.

*Emsley W. Johnson* and *Joseph W. Hutchinson,*
for appellees.

MYERS, J.—This is a proceeding in *quo warranto*
brought by the relator, George B. Daubenspeck,
against appellees to determine the right of each ap-
pellee to the office of director of the Union Telephone

Company of Carmel, Indiana. Issues were formed, trial had, special finding of facts made, and conclusions of law stated thereon in favor of appellees, and judgment against appellant. The errors assigned question (1) the ruling of the trial court on relator's demurrer to the second paragraph of answer, and (2) each conclusion of law. .

The assignments of error present the same question. The following facts taken from the special findings will suffice to indicate the question for decision. The Union Telephone Company was incorporated on August 10, 1903, under an act of the general assembly of this state, approved on April 7, 1881, and acts amendatory thereof and supplemental thereto. From then until now the board of directors has been composed of five stockholders. It was the custom of the company to elect annually three, one for the term of one year and two for the term of two years. Ninety-six and one-half shares is a majority of all the snares of stock issued and outstanding. Appellees are now acting as directors of the company, claiming to have been elected at a regular annual stockholders' meeting.

The facts pertaining to their election are as follows: Three directors were to be elected. Tellers were chosen, and six persons, appellees and three others, all qualified for the office of director, were nominated to be voted for. Appellees each received sixty-eight votes, and all were counted for them. The other three nominated received 96½ votes each, but the tellers counted for them only 28½ votes and rejected and refused to count the other sixty-eight, on the sole ground that these votes represented sixty-eight shares of stock of the company owned and con-

trolled by the relator over and above the five shares voted by him, and that to count the sixty-eight votes would be in violation of, and contrary to, article 11 of the articles of association, which reads as follows:

> "No person, firm or company can ever at any one time own or control more than five shares of the capital stock of this company, and every such person, firm or company shall be entitled to only one telephone connection for each paid up share of stock so owned."

That said sixty-eight shares were not in the name of the relator on the books of the company, and never had been, but were held by others in blocks of five shares or less, under an agreement with the relator that said stock should be voted as directed by him at all stockholders' meetings, and for the purposes by him of controlling the corporation and its policies notwithstanding article 11.

Appellees claim that article 11 has the force and effect of a by-law, and also that it amounts to a stipulation between the stockholders as to their holdings of stock.

The by-law contention of appellees cannot be sustained. The power to adopt by-laws for the government of a telephone corporation and the management of its business, and to determine the manner in which the stock of the company shall be held and assigned is by statute conferred exclusively upon the board of directors. §§6, 11, Acts 1881 p. 698, §§4186, 4191 R. S. 1881, §§5794, 5800 Burns 1914; *Manufacturers' Bldg. Co.* v. *Landay* (1905), 219 Ill. 168, 76 N. E. 146.

Ordinarily by-laws are made by the stockholders, but, where the statute gives that power to the board of directors, the stockholders cannot change it or interfere with the board in this particular so long as such by-laws are reasonable and do not interfere with the vested and substantial rights of the stockholders, or are not contrary to public policy or to the established law of the land. *State, ex rel.* v. *Anderson* (1903), 31 Ind. App. 34, 67 N. E. 207; *Manufacturers' Bldg. Co.* v. *Landay, supra; Van Atten* v. *Modern Brotherhood, etc.* (1906), 131 Iowa 232, 108 N. W. 313; *Farmers', etc., Bank* v. *Wasson* (1878), 48 Iowa 336, 30 Am. Rep. 398. In this case the board of directors has never assumed to pass any by-law other than to define the duties of the president, secretary-treasurer and manager. Neither of these by-laws has any reference to the holding, transferring, or assigning of the stock from or to stockholders. If only the board of directors had power to pass by-laws, and none were passed by that body limiting the number of shares of stock an individual person might own or control in the corporation, then it cannot be said that a by-law on that subject was passed by any authorized authority. This is not a case where the corporation has exceeded its authority or is in any manner guilty of criticizable conduct. Consequently, the question before us does not involve any act of the corporation, but relates alone to the power of the incorporators to limit the number of shares of stock which may be held at any one time by an individual stockholder.

It will be noticed that articles of incorporation under the telephone act requires only three affirmative

statements, namely: (1) The name assumed
3.    by the company; (2) the counties or places
within which such company proposes to establish, maintain and operate telephones and telephone exchanges; and (3) the amount of capital stock and the number of shares into which it is divided. Acts 1881 p. 698, §2, §4182 R. S. 1881, §5790 Burns 1914. Other provisions of this act provide: §6 (§5794, *supra*): ''The board of directors shall adopt by-laws for the government of the corporation and the management of its business;'' §11 (§5800 *supra*): ''The board of directors shall have power  *  *  *. It may also, in its by-laws, determine the manner in which the stock of the company shall be held and assigned.'' Section 5 requires the principal office of the company to be maintained in this state. Section 7 limits the life of corporations organized under this act to fifty years, and §4, as amended, Acts 1899 p. 124, provides that ''the stockholders shall elect, from among their number, not less than three directors.'' It thus appears that this act contains no provision expressly restricting stock ownership nor any provision relative to the voting of the stock of such company. The title of the act is, ''An act concerning telephone companies and supplemental to 'an act for the incorporation of manufacturing and mining companies and companies for mechanical, chemical and building purposes'; approved May 20, 1852, and all acts amendatory thereof and supplemental thereto, and declaring an emergency.''

At this point we meet the question, Is the telephone act a part of the manufacturing act and, if so, must

they be construed together and as appplicable
4. to telephone companies? Appellees insist that
the telephone act is independent legislation
5. and to it alone the corporation must respond,
and must look to it for its limitations.

True, this act does not purport to be an amendment, and for that reason it is suggested that these acts must be construed separately because there is no power in the general assembly to pass supplemental acts. This court has held otherwise, and we know of no good reason why this rule should be changed. *McCleary* v. *Babcock* (1907), 169 Ind. 228, 234, 82 N. E. 453. There is nothing to indicate that the legislature used the word "supplemental" in any sense other than as generally understood. Thus considered, it will be regarded as referring to "that which is added to a thing to complete it." 3 Bouvier, Law Dictionary (Rawle's 3d ed.) 3187. It means an addition which cannot be made in the form of an amendment. "It is that which supplies a deficiency, adds to, or completes, or extends that which is already in existence, without changing or modifying the original." *McCleary* v. *Babcock, supra.*

The title of the manufacturing act is fully incorporated into the title of the telephone act; therefore,
if the title of an act may be used as a guide in
6. determining the intention of the lawmakers—
and it certainly can—it would be hard to find
a title more expressive of intention to supplement
an act than the one under consideration.

At the time the manufacturing act was passed, telephones and telephone companies were unknown, but,

as time passed on and the demand for a law
4.    authorizing the incorporation of such compa-
nies arose, it was met by the general assembly
by adding to the manufacturing act, as amended and
supplemented and in force April 7, 1881, provisions
whereby such companies might be created and also
provisions especially applicable to this new class of
companies; and otherwise they should be subject to
the laws then in force. But in applying these laws,
it must be understood that the provisions of the manu-
facturing act step in only when there is no supple-
mental provision covering the point involved.

As we have seen by amended §4 of the telephone
act, *supra,* the stockholders are required to elect not
less than three directors who shall serve for one year,
and until their successors are elected. This statute,
when read in connection with §3 of the manufacturing
act, makes it the duty of the stockholders to elect
such directors annually. In 1861 §4 of the manufac-
turing act of 1852, *post,* was amended by re-enacting
the privilege to absent stockholders to vote by proxy,
and by repealing the limitation that "No one stock-
holder shall give more than 20 votes," and in place
thereof, "and each share of stock shall entitle the
owner thereof to one vote." This amendment has
been in force continuously since its adoption. Acts
1861 p. 135, §3855 R. S. 1881, §5071 Burns 1914.
While §7 of the act of 1852 was amended in 1891, yet
no change was made in that part of the section which
provided that "the stock of such company shall be
deemed personal estate, and when fully paid in shall
be transferable in such manner as the by-laws may
prescribe." Acts 1891 p. 344, §5088 Burns 1914.

These considerations require us to hold that the telephone act should be considered a part of the manufacturing act, and hence the manufacturing act of 1852 as amended and supplemented must control the rights of the parties to this appeal.

We have seen that the articles of incorporation must contain three affirmative statements as a condition precedent to a legal incorporation. When incorporated, it and likewise the stockholders are granted certain rights and powers, and at the same time they are subject to certain corporate regulations. For instance, upon the incorporation of the Carmel Telephone Company, the statute provided that "the board of directors shall adopt by-laws for the government of the corporation and the management of its business"; also that the board of directors may by the adoption of by-laws determine the manner in which the stock of the company shall be held, assigned and transferred. §§5800, 5088, *supra*. These restrictions are intended for the benefit of the corporation, whereby its rights may be protected from the transfer of stock to irresponsible persons and thereby rendering authorized assessments worthless to the impairment of the company's credit; and for the further reason to enable the corporation to know its stockholders. As to the stockholder, he is given one vote for each share of stock owned by him, and, if absent from stockholders' meetings, he may vote by proxy. His shares of stock are to be deemed personal estate and transferable in the manner prescribed by the by-laws. In the particulars mentioned, the stockholder is secured by legislative enactment. He knows his shares of stock have been classed as personal

property, along with which goes the inseparable right of alienation, unless the paramount law imposes some inconsistent restriction. In case of a telephone company, he is bound to know that the legislature has confided to the board of directors, as a part of the internal management of the corporation's affairs, the power to determine the necessary restrictions to be placed on the alienation and transfer of its stock. However, this general authority of the board is qualified by the declaration that the stock "shall be deemed personal estate," thereby impliedly saying to the board of directors that all such regulations or restrictions, unless otherwise provided, shall be adopted in accordance with the law applicable to personal property generally. *In re Klaus* (1886), 67 Wis. 401, 407, 29 N. W. 582.

True, as appellees claim, the Carmel Telephone Company is a voluntary association of persons engaged in a common enterprise, but we cannot agree that the article in question is responsive to any specification in the law which is necessary to give it any force or effect as a charter regulation. *Obrien* v. *Cummings* (1883), 13 Mo. App. 197. Nor can we agree that the incorporators were free to make a law for themselves limiting every stockholder to not more than five shares of stock at any one time. That was a restriction, no doubt, intended for the benefit of the corporation, but it is with reference to a matter expressly by statute referred to the board of directors on which it is conceded that the board had neglected to act.

From these considerations we conclude that the article in question is without force or effect; that the

facts fail to disclose any legal restriction as to the number of shares of stock which an individual stockholder may own and control in the Carmel Telephone Company. As to the relator it appears that he owned and controlled sixty-eight shares of stock which were not in his name on the stock book of the company, but in the name of other persons. However, persons representing fifty-five shares thereof were present in person and voted the same, and relator held the proxies of persons in whose name thirteen shares were so shown and held.

From all the facts we conclude that the relator was the owner of the stock in question and, in the absence of any statute or valid by-law to the contrary, was entitled to vote the same, and the fact that another voted this stock will not have the effect of invalidating such votes.

It is conceded that appellees received only sixty-eight votes each, and each of their opponents received 96½ votes. Under such circumstances appellees cannot be regarded as the choice of the stockholders at such election. The exclusion and rejection of certain votes, for the reason stated by the tellers, was error, and neither of the appellees were duly elected. *People* v. *Phillips* (1845), 1 Denio (N. Y.) 388.

Judgment reversed, and cause remanded with instructions to the trial court to restate its conclusions of law in accordance with this opinion, and to render judgment in conformity with the restated conclusions of law.