MILES ET AL. *v.* DEPARTMENT OF TREASURY ET AL.

[No. 26,354. Filed January 28, 1935. Rehearing denied November 21, 1935.]

174

*Owen S. Boling, Cox, Conder, Bain & Cox, Martin M. Hugg* and *Stanley Morris,* for appellants.

*Philip Lutz, Jr.,* Attorney-General, *Fred A. Wiecking,* Assistant Attorney-General, and *Joseph P. McNamara,* Deputy Attorney-General, for appellees.

*Moses, Kennedy, Stein & Bachrach, Nusbaum & Mowrer, Bomberger, Peters & Morthland, Matson, Ross, McCord & Clifford, Harry T. Ice* and *Philip Glick,* amici curiae.

FANSLER, C. J.—Appellants brought this action as taxpayers on behalf of themselves and others similarly situated to enjoin appellees from paying out funds of the state for the printing of Chapter 50 of the Acts of 1933, p. 388, known as the "Gross Income Tax Act of 1933," on the ground that the statute is unconstitutional and void. A demurrer for want of facts was sustained upon the theory that the act is constitutional. The only error assigned questions the correctness of the ruling on demurrer, and hence the constitutionality of the law.

The act in question is entitled "AN ACT to provide for the raising of public revenue by imposing a tax upon the receipt of gross income, to provide for the ascertainment, assessment and collection of said tax, and to provide penalties for the violation of the terms of this act, and declaring an emergency." Clause f of section 1 provides:

"The term 'gross income,' except as hereinafter otherwise expressly provided, means the gross receipts of the taxpayer received as compensation for personal services, and the gross receipts of the tax payer derived from trades, businesses or commerce, and the gross receipts proceeding or accruing from the sale of property, tangible or intangible, real or personal, or service, or any or all of the foregoing, and all receipts by reason of the investment of capital, including interest, discount, rentals, royalties, fees, commissions or other emoluments, however designated, and without any deductions on account of the costs of property sold, the cost of materials used, labor cost, interest or discount paid, or any other expense whatsoever, and without any deductions on account of losses. . . ."

All persons domiciled in or who derive income from sources within the state are taxed either upon the basis of one per cent of their income or one-fourth of one per cent of their income. As a basis for computation, the income received by each person is classified according to source. The taxpayer pays a tax computed upon income from manufacturing or mining, producing oil or timber, from agriculture, or wholesaling, or jobbing tangible commodities, an amount equal to one-fourth of one per cent of the income so derived. He pays a tax computed upon the income derived from producing or selling electrical energy or gas, operating a railway, motor vehicle or other vehicle for the transportation of freight, express, or passengers; operating a pipe line, telephone, or telegraph line, or other public utility; or operating a bank, insurance, finance or loan company; or from any business or professional activity not otherwise classified; on income resulting from the sale of property, or based upon funds received under any contract other than connected with the business otherwise classified, upon the basis of one per cent of said income; corporations are treated as persons domiciled within the state.

Appellants and amici curiae contend that the measure is a property tax, and that, since the assessment is not uniform and the rate equal as to all property, is is unconstitutional under Article 10, Section 1, of the Constitution of Indiana. It is appellees' contention that it is an excise tax, measured by the amount of gross income, and, therefore, not controlled by the limitations described by Article 10, Section 1.

The power to tax is inherent in and essential to the existence of the state, and may be exercised without limit upon property, occupations, and activities carried on within the state unless prohibited by State or Federal Constitutions. *Railroad Co.* v.

*Peniston* (1873), 85 U. S. 5; *Royall* v. *State of Virginia* (1886), 116 U. S. 572, 6 S. Ct. 510; *Bell's Gap R. Co.* v. *Pennsylvania* (1890), 134 U. S. 232, 10 S. Ct. 533; *State Board of Tax Commrs. of Ind.* v. *Jackson* (1931), 283 U. S. 527, 51 S. Ct. 540.

The right to tax is not a constitutional grant, but exists independently, and constitutional provisions regarding taxation operate as limitations only on an otherwise unlimited power. *State Board of Tax Commrs.* v. *Holliday* (1898), 150 Ind. 216, 49 N. E. 14; *Hart* v. *Smith* (1902), 159 Ind. 182, 64 N. E. 661.

It is well settled that Article 10, Section 1, which provides for uniform and equal rate of assessment and taxation, and forbids exempting property except for specific purposes, applies only to property taxes under a general levy. *Thomasson* v. *State* (1860), 15 Ind. 449; *Bright* v. *McCullough* (1866), 27 Ind. 223; *Kersey* v. *City of Terre Haute* (1903), 161 Ind. 471, 68 N. E. 1027; *Gafill* v. *Bracken* (1924), 195 Ind. 551, 146 N. E. 109; *State Board of Tax Commrs. of Ind.* v. *Jackson, supra.*

In recent years there has been considerable apparent difference of opinion as to whether a general income tax is a tax on property, but it was not always so.

> "The income tax which has been in force in England since 1798 has been considered to be a duty or excise, and it has been held that the tax was applicable to interest on the public debt, although it was provided by statute that such interest should be paid free of any tax or charge whatever." 26 R. C. L. 142.

Prior to 1894 the question seemed settled in this country. In the case of *Brushaber* v. *Union Pacific R. Co.* (1916), 240 U. S. 1, 36 S. Ct. 236, the Supreme Court of the United States, in an opinion written by Chief Justice White, said (p. 15) :

"Again the situation is aptly illustrated by the various acts taxing incomes derived from property of every kind and nature which were enacted beginning in 1861 and lasting during what may be termed the Civil War period. It is not disputable that these latter taxing laws were classed under the head of excises, duties and imposts because it was assumed that they were of that character inasmuch as although putting a tax burden on income of every kind, including that derived from property real or personal, they were not taxes directly on property because of its ownership. And this practical construction came in theory to be the accepted one since it was adopted without dissent by the most eminent of the textwriters. 1 Kent Com. 254, 256; 1 Story Const., §955; Cooley Const. Lim. (5th ed.) 480; Miller on the Constitution, 237; Pomeroy's Constitutional Law, §281; Hare Const. Law, Vol. 1, 249, 250; Burroughs on Taxation, 502; Ordronaux, Constitutional Legislation, 225."

In 1894 Congress passed an act placing a tax on income from all sorts of property and sources of revenue, which did not apportion the burden among the states. The constitutionality of the act was passed on by the Supreme Court in the case of *Pollock* v. *Farmers' Loan & Trust Co.* (1895), 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108. The law was held unconstitutional for lack of apportionment, the court dividing five to four upon the question. Careful and lengthy opinions were written by the majority and the minority dissenting; and upon petition for rehearing other opinions were written by both the majority and minority. Since the decision of the Pollock case, some courts have construed the opinion as holding that a general tax based upon incomes is a property tax. In one of the briefs, in which the cases holding that an income tax is a property tax are reviewed, it is said that most of those cases get their lead in the Pollock case, and this is true. It has been recognized, however, by the Supreme Courts of Illinois and

Arkansas that the Pollock case does not hold a general income tax to be a property tax. *Young* v. *Illinois Athletic Club* (1923), 310 Ill. 75, 141 N. E. 369; *Sims* v. *Ahrens* (1925), 116 Ark. 557, 271 S. W. 720.

In the case of *Brushaber* v. *Union Pacific R. Co.*, *supra*, the United States Supreme Court places an interpretation upon its own decision in the Pollock case, which we think should be conclusive as to the effect of that decision. Chief Justice White, speaking for the court, said (p. 16) :

> ". . . the conclusion reached in the *Pollock case* did not in any degree involve holding that income taxes generically and necessarily came within the class of direct taxes on property, but on the contrary recognized the fact that taxation on income was in its nature an excise entitled to be enforced as such unless and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was adopted to prevent, in which case the duty would arise to disregard form and consider substance alone and hence subject the tax to the regulation as to apportionment which otherwise as an excise would not apply to it."

And again the effect of the Pollock case is emphasized by the court's explanation of the purpose of the Income Tax Amendment to the Federal Constitution, which the court determined to be "the prevention of the resort to the sources from which a taxed income was derived in order to cause a direct tax on the income to be a direct tax on the source itself and thereby to take an income tax out of the class of excises, duties and imposts and place it in the class of direct taxes." It thus appears that, as the United States Supreme Court interprets its own opinion, the general tax on incomes is not a property tax, and the Federal Income Tax passed before the Amendment was held unconstitutional only because it had the effect of indirectly avoiding the consti-

tutional requirement that taxes affecting property must be apportioned among the states.

The Opinion of the Justices (1915), 220 Mass. 613, 108 N. E. 570, is also relied upon by the courts which have held a general income tax to be a property tax as sustaining that position. An examination of that opinion discloses that the proposed tax under consideration was not a general income tax affecting income from all sources, but a tax upon income from intangible personal property only. Such a tax has always been distinguished from a general income tax, and has more generally been held to be a property tax since it affects income from property only. Thus the reasoning in the opinion must be considered in the light of the character of tax under consideration, and limited in its effect to such a tax.

The question was again presented to the Supreme Court of Massachusetts in *Trefry* v. *Putnam* (1917), 227 Mass. 522, 116 N. E. 904, L. R. A. 1917 F, 806, a case involving what seems to have been a general income tax statute. In the latter case the court does not seem to have decided the question expressly, although the case is referred to as holding that a general tax on income is an excise notwithstanding it includes income from property, since in such a case no special burden is put upon the property by virtue of ownership. 26 R. C. L., p. 142.

It is difficult to avoid the conclusion that in the earlier case the Supreme Court of Massachusetts was influenced by what the Supreme Court of the United States has indicated to be an erroneous impression of the Pollock case. The same thought applies to the case of *Bachrach* v. *Nelson* (1932), 349 Ill. 579, 182 N. E. 909. It will be noted that this Illinois case seems to give no consideration to the opinion of the court in the earlier Illinois case of *Young* v. *Illinois Athletic Club, supra,* in which

it is recognized that the Pollock case does not decide that a general income tax is a property tax, and in which the court held that an income tax is an assessment upon the income of the person and not upon any particular property from which the income is derived.

When it is considered that, until the decision in the Pollock case, general income taxes were generally accepted as an excise and not a tax upon property because of ownership, the force of the Pollock case in affecting decisions to the contrary must have been considerable. That it was, in some instances at least, is indicated by the language of Wood, J., in the majority opinion upon rehearing in *Sims* v. *Ahrens, supra.* In changing his views, he points out that the leading case cited, as supporting the view that an income derived from property is itself property, and that a tax upon the income therefrom is a tax upon property, is the Pollock case. He then says:

"I have heretofore considered the Pollock case, *supra,* as complete and ultimate authority for holding that an income tax is a property tax."

Following this, he quotes the language of Chief Justice White in *Brushaber* v. *Union Pacific R. Co., supra,* and concludes:

"It is this language of Chief Justice White interpreting *Pollock* v. *Farmers' Loan & Trust Co., supra,* not quoted by Judge Hart in his dissenting opinion, that I now wish to stress, because it shows that an income tax in its essential nature is not a property tax, but an excise tax."

This Arkansas case is cited to us as supporting the contention that a general income tax is a tax upon property. In fact, it is authority to the contrary. The entire court agreed that an income tax is not a property tax. It held an income tax very similar to the one in question here, and the only one of that character that has been called to our attention, to be unconstitutional, not be-

cause it was a tax on property, but because it was an excise tax of a character forbidden by the Constitution of the State of Arkansas, which expressly limits the levying of excises. The only difference of opinion arose over the question of whether a net income tax, as distinguished from a gross income tax, could be classified somewhere between a property tax and an excise tax, and thus escape constitutional inhibition.

Our own Appellate Court recently said that:

> "An income tax is distinguished from other forms of taxation, in that it is not levied upon property nor upon the operation of a trade, or business, or subjects employed therein, nor upon the practice of a profession, the pursuit of a trade or calling, but upon the acquisitions of the taxpayer arising from one or more of these sources or from all combined. It is not a tax on property, and a tax on property does not embrace income. Black, Income and Federal Tax, §§1 and 2." *Owen* v. *Fletcher Savs. & Trust Bldg. Co.* (1934), 99 Ind. App. 365, 189 N. E. 173.

To the same effect, see *Featherstone* v. *Norman* (1930), 170 Ga. 370, 153 S. E. 58, 70 A. L. R. 449; *Hattiesburg Grocery Co.* v. *Robertson* (1921), 126 Miss. 34, 88 So. 4, 25 A. L. R. 748; *State* v. *Wisconsin Tax Commission* (1917), 166 Wis. 287, 163 N. W. 639.

Currently, as in the period preceding the Pollock case, recognized textwriters generally express the view that a general income tax is not a property tax, but an excise.

Income in common parlance and in the law is used in contradistinction to property. 31 C. J. 397 (§2), B.

> "The term 'property,' as used in reference to taxation, means the corpus of an estate or investment, as distinguished from the annual gain or revenue from it. Hence a man's income is not 'property' within the meaning of a constitutional requirement that taxes shall be laid equally and uniformly upon all property within the state." Black on Income and other Federal Taxes (3d. Ed.), §44.
>
> "The better rule seems to be that an income tax is

not a tax on property within a constitutional requirement that taxation on property shall be in proportion to its value." Cooley on Taxation (4th Ed.), §1751.

"In some of the states in which income taxes have been levied in the past there have been constitutional requirements of uniformity in taxation which would have been violated if the income tax was considered a property tax but not if it was considered an excise; but such statutes were uniformly and generally without controversy upheld. So also statutes authorizing municipal corporations to levy taxes on property have not generally been construed to authorize the levy of an income tax. Nevertheless it is probably now generally conceded that a tax laid directly on the income of property is a tax on the property itself, in accordance with the rule laid down by the federal courts, although a tax on the income from a trade, profession or employment is undoubtedly an excise; and a tax on income from all sources is also probably an excise, although it includes income from property, since in such case a special burden is not put upon property by virtue of the ownership thereof." 26 R. C. L., p. 142.

In Black on Income and other Federal Taxes (4th Ed), §3, it is said:

"Excise taxes include license fees and also some other forms of taxation, and these also are theoretically distinguishable from income taxes, although the practical difference is very slight in cases where the excise is measured by the income."

The author was dealing with the Federal Income Tax, which is a tax on net income, that is to say, the net profit to the taxpayer from all of his business dealings. The law in question taxes the gross income, or, as it is expressed in the title of the act, "the receipt of gross income." Section 2 of the act begins:

"There is hereby imposed a tax, measured by the amount or volume of gross income, and in the amount to be determined by the application of rates on such gross income as hereinafter provided."

While there may be a "theoretical distinction" or a "very slight" difference between a net income tax and an excise measured by income, it is difficult to find any practical distinction to be made between a gross income tax and an ordinary excise tax. It is a tax "on the recipient of the income, the tax being upon the right or ability to produce, create, receive, and enjoy, and not upon specific property."

In determining whether the tax provided is a property tax or an excise, we may look to the act itself and the legislative intention in enacting it. The quotations from the title and enacting clause above referred to would tend to indicate that it was intended as an excise tax, and, still, if it is, in fact and effect, a tax upon property, a legislative intention to the contrary cannot prevail. If the language of a statute is ambiguous or doubtful, reference may be made to its title in ascertaining the legislative intention. *Huff* v. *Fetch* (1924), 194 Ind. 570, 143 N. E. 705; *State ex rel. Daubenspeck* v. *Day* (1919), 189 Ind. 243, 123 N. E. 402; *Hanly* v. *Sims* (1910), 175 Ind. 345, 93 N. E. 228.

It is a cardinal principle of statutory construction that when there are two or more possible constructions of a statute that one will be adopted, if reasonable, which will rescue the act from unconstitutionality. *State* v. *Lowry* (1906), 166 Ind. 372, 77 N. E. 728; *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7.

The case of *Mayor, etc., of Savannah* v. *Hartridge* (1849), 8 Ga. 23, seems to have involved the question of whether or not a charter authorizing a municipal corporation to tax all real and personal property conferred the right to tax income. It was held that clearly such a charter did not authorize the laying of an income tax. If the Constitution of Indiana provided that no taxes might be levied other than those upon real and

personal property, it would not be seriously urged that a tax on income was permissible.

Those who contend that an income tax which reaches the income from property is a tax upon property, argue that income derived from property is property, and that a tax upon the income, like a tax upon the property itself, is a tax upon property because of ownership. It is obvious that income, or the fruit of it in possession at any given time, is property, but, as pointed out by the Supreme Court of Massachusetts, one cannot be said to have income at any given time. Income implies accruals over a period of time, while property implies possession at a given time. The Constitution of this State has been interpreted as requiring that all property shall be assessed and taxed, and yet no effort has ever been made in this state to tax income as property. It is true that accumulations from income in hand upon the first day of March have been treated as property and taxed as such. Property is taxed regardless of ownership, the burden being upon the property itself. The property of those residing in foreign jurisdictions is taxed in the same manner and to the same extent as the property of those domiciled within the state, so that property taxes bear no relationship to the domicile of the owner, nor to his enjoyment of the income therefrom.

It was said by the Supreme Court of the United States in *Lawrence* v. *State Tax Commission of Miss.* (1932), 286 U. S. 276, 279, 52 S. Ct. 556:

"The obligation of one domiciled within a state to pay taxes there, arises from unilateral action of the state government in the exercise of the most plenary of sovereign powers, that to raise revenue to defray the expenses of government and to distribute its burdens equably among those who enjoy its benefits. Hence, domicile in itself establishes a basis for taxation. Enjoyment of the privileges of residence within the state, and the attendant right to invoke the protection of its laws, are inseparable

from the responsibility for sharing the costs of government. . . .

"The present tax has been defined by the Supreme Court of Mississippi as an excise and not a property tax, *Hattiesburg Grocery Co.* v. *Robertson*, 126 Miss. 34, 88 So. 4; *Knox* v. *Gulf, M. & N. R. Co.*, 138 Miss. 70, 104 So. 689, but in passing on its constitutionality we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it. . . .

"It is enough, so far as the constitutional power of the state to levy it is concerned, that the tax is imposed by Mississippi on its own citizens with reference to the receipt and enjoyment of income derived from the conduct of business, regardless of the place where it is carried on. The tax, which is apportioned to the ability of the taxpayer to bear it, is founded upon the protection afforded to the recipient of the income by the state, in his person, in his right to receive the income, and in his enjoyment of it when received. These are rights and privileges incident to his domicile in the state and to them the economic interest realized by the receipt of income or represented by the power to control it, bears a direct legal relationship. It would be anomalous to say that although Mississippi may tax the obligation to pay appellant for his services rendered in Tennessee (citing authorities), still, it could not tax the receipt of income upon payment of that same obligation. We can find no basis for holding that taxation of the income at the domicile of the recipient is either within the purview of the rule now established that tangibles located outside the state of the owner are not subject to taxation within it, or is in any respect so arbitrary or unreasonable as to place it outside the constitutional power of taxation reserved to the state."

The language quoted makes clear the distinction between a tax laid upon property itself and a tax levied upon an individual because of his enjoyment of the privileges of domicile within the state, and clearly sustains the view that the amount of his contribution for this privilege may properly be measured by the extent of his income. Nor can it logically be said that profit

or net income is necessarily the only true criterion. Real estate is taxed upon a cash valuation basis without regard to earnings. It may be that the earning power of property is considered in determining its cash value, but it is at least not controlling, and it is a well-known fact that large properties which earn nothing, and even property which is not intended to earn and has no earning power, is taxed. The individual, as distinguished from his property, is protected in the enjoyment of the privileges of citizenship, the protection of his person, and the enjoyment of his income.

It cannot logically be said that one who engages in large enterprises, with the assurance that his rights are protected by the vast machinery of government which makes possible the conduct of affairs under civilized rules, has not enjoyed a privilege and a protection, and put a burden upon the machinery of government on account of which he may be required to contribute to the governmental expense, merely because his activities did not yield him a net profit in any given period. The government must operate in years in which its citizens have not profited as well as in years when they have. It is universally recognized that the burdens of government cannot be distributed with exact justice upon all persons and property. It is also recognized that to distribute the burden of government per capita would work an injustice upon those who are least able to pay and least able to cope with social and economic problems, in favor of those better equipped to meet social and economic problems, and who, because of their more complex activities, receive more protection from and put more burden upon the instrumentalities of government. To distribute the burden with exact justice is impossible. The legislature has chosen to measure the share of each by his gross income. It cannot be said that that method is unreasonable.

We conclude that the tax in question is an excise, levied upon those domiciled within the state or who derive income from sources within the state, upon ██ the basis of the privilege of domicile or the privilege of transacting business within the state, and that the burden may reasonably be measured by the amount of income. The reasoning which justifies a tax upon the basis of domicile as readily supports and justifies a tax upon the basis of the right to receive income within, or transact business under the protection of the state. We feel that the weight of reason and authority sustains this view.

Appellants contend that, if the tax in question is held to be an excise, the difference in rates as applied to the various classifications makes it invalid and ██ unconstitutional as denying the equal protection of the law under the Fourteenth Amendment to the Federal Constitution, and article 1, §23, of the Constitution of Indiana. It is clear that, under the Constitution of Indiana, equality of taxation is not required except in a case of taxes affecting property by general levy; and the rule of equality, that there shall be no exemptions and no discrimination, does not apply under the Constitution of this state or of the United States so long as all persons in like circumstances are treated alike. The legislature has full power to select one class for taxation to the exclusion of another, and to tax different classes at different rates. It was said by the Supreme Court of the United States in *State Board of Tax Com'rs. of Ind.* v. *Jackson, supra* (p. 537) : "The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or

the classification for taxation of properties, businesses, trades, callings, or occupations. . . . The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction. . . ."

It was said in the same opinion that article 1, §23, of the Constitution of Indiana does not set any different standard than does the Fourteenth Amendment to the Constitution of the United States, and that the section permits classification for purposes of taxation, and that the same principles are applicable as under the Fourteenth Amendment. This statement is amply supported by authorities in this state. It has been said by this court that the one provision is the antithesis of the other, and that the rights protected are identical. *Hammer* v. *State* (1909), 173 Ind. 199, 89 N. E. 850.

Judge Cooley says:

"The state may tax all, or it may select for taxation certain classes and leave others untaxed."

It is true that, under pretense of taxing, rates may be made so high as to destroy or confiscate, or be such as to indicate a motive other than legitimate regulation or the raising of revenue, and in such case constitutional provisions will protect; but even though the taxes levied upon a given class, to the exclusion of other classes, may be so high as to discourage the activity burdened, they may be justified upon the basis of a public policy which sees an advantage to the general welfare in the encouragement of one activity or business and the discouragement of others. The right of the legislature to levy an unequal and discriminatory tax upon such considerations, in addition to the incident necessity for revenue, is fully discussed and sustained in the recent opinion of the Supreme Court of the United States in *Fox* v. *Standard Oil Co. of New Jersey* (1934), 294 U. S. 87, 55 S. St. Rep. 333. See *State*

*Board of Tax Commrs. of Ind.* v. *Jackson, supra,* and *Midwestern Petroleum Corporation* v. *State Board of Tax Commrs.* (1933), 206 Ind. 688, 187 N. E. 882. The legislature may not, however, arbitrarily and capriciously define and set up unnatural classes so as to affect those who are in substantially a like situation upon a different basis.

In *State Board of Tax Commrs. of Ind.* v. *Jackson, supra,* an excise statute of the State of Indiana, levying a tax upon stores, was upheld, and the provisions for graduating the amount of the tax upward, in the case of multiple-owned stores, was sustained. It was held that there was a sufficient difference in the method of doing business to justify a separate classification for the different groups. The tax was considered by the court in that case as purely a revenue measure with no incidental question of public policy involved. The principles involved are not new. They were discussed at length by this court in *Board of Commrs., etc.* v. *Johnson* (1909), 173 Ind. 76, 89 N. E. 590, in a careful opinion by Myers, J., in which the propositions announced were supported by exhaustive citation of authority. We quote from the opinion, omitting the authorities cited (p. 84) :

> "The federal Constitution has not undertaken to lay down a hard and fast rule with respect to due process of law, the equal protection of the laws, nor as to privileges and immunities, nor does the equal protection clause prevent the states from adjusting their systems of taxation in all proper and reasonable ways. . . .
>
> "If all persons that are in like circumstances or affected alike are treated under the law the same, there is no deprivation of the equal protection of the law. . . . Conversely, a law which operates upon some persons or corporations, and not upon others like situated or circumstanced, or in the same class, is invalid. . . .
>
> "So, classes of persons may be exempt from taxa-

tion upon reasonable grounds, or different kinds of property be taxed in different ways. . . . Persons engaged in the same line of business may be classified, and different provisions applied to each class, without depriving any of them of the equal protection of the laws. . . . Corporations, individuals, wholesale and retail dealers, domestic and foreign corporations, may be separately classified and taxed differently, so long as the constituent classes are treated alike. . . .

"Whether a statute is applicable to a large or small class is a legislative, and not a judicial, question. . . .

"But taxation is not uniform or equal when it applies to a portion of a class, and omits a portion. The object sought to be attained is not only to prevent the singling out of any person or class of persons as the subjects for discriminating or hostile legislation, but also to prevent inequality by conferring exemptions or immunities upon persons or classes of persons. . . .

"The classification itself must be based upon natural reasons, upon reasons which naturally inhere in the subject-matter, upon a real difference existing between the classes, so as to produce no distinction between members of the same class. . . ."

Measured by these principles, we find no unlawfulness in the classification provided for in the act. The classification is natural and easily understood. There are but two rates imposed; the higher of which, one per cent, cannot be said to be calculated to destroy or limit the activities of those upon whom it is imposed. The lower rate is imposed upon those whose activities bring, or are likely to bring, them in competition with residents of other states, and who are subject to such competition within the State of Indiana as well as without. Any tax burden measured by the extent of the business activities of such persons handicaps them in their activities. It is within the scope of legislative power in levying taxes to vary rates upon considerations of public policy, and, if upon the theory that to do otherwise might tend to discourage given

industries, it may put a lighter burden upon them so long as all in like circumstances are treated alike. There are other differences in situations between those taxed at one-fourth of one per cent and the remainder of those taxed which might be cited as a sufficient basis for the classification. Those engaged in serving the public which are not included in the class taxed at the lower rate, operate public utilities which are impressed with a definite public interest and are regulated as to rates by the state. Tax burdens upon them are directly reflected in the rates which they receive from the public. Higher rates of taxes might require higher rates for service. This is a sufficient basis for their separate classification.

Clause f of section 1 of the act defines the term "gross income" as the gross receipts of the taxpayer from all sources, but exempts from the income covered by the definition, cash discounts on sales, freight prepaid and repaid by the purchaser, goods sold and returned when the sale price is refunded, and the sale price of an article accepted as part payment on any new article sold, when the full price of the new article is included in the gross income. Included in the definition is the proceeds of any property handled on consignment. The first sentence is obviously intended to simplify accounting since it excludes things which are not, in fact, income. The second clause is obviously intended to preclude avoidance of tax by the subterfuge of merchandising by consignment.

Clause g of the same section provides that:

> "In the case of banks, trust companies, building and loan associations, brokers, finance companies, dealers in commercial paper, and persons engaged in the business of lending money or credit, the term 'gross income' shall be deemed to mean gross earnings in respect to that part of the total gross income of such persons which is derived from the

businesses and activities enumerated in this sub-section."

Those engaged in the activities referred to deal in money and credit, and in that respect are readily distinguishable. Their activities are affected by public interest to the extent that their rates and practices have been controlled and regulated. In a sense they deal in money that is not theirs. They furnish the medium through which business is transacted. Through long-established practice, the commissions, charges, or interest differential, which they receive in the handling of the property of others, is so small that a tax based upon the receipt of money by them from their customers or depositors might require that accepted business methods be radically changed. These differences in business practices are sufficient to distinguish them and classify them for different treatment, which may be justified on grounds of public policy.

Clause h of the same section provides that:

"In case of domestic insurance carriers, gross income shall not include income which becomes a reserve or other policy liability in accordance with the laws of this state or the rulings of the duly authorized supervisory officials and shall not include such premium income as is derived from business conducted outside this state on which such domestic insurance carrier pays a premium tax of one per cent or more."

If the state, as a matter of public policy, desires to encourage insurance and minimize its burdens, it is within the scope of its discretion. The latter part of the provision would seem designed to avoid handicapping domestic insurance companies upon the transaction of business without the state, upon which they are already taxed. We see no reason why they may not be so encouraged as a matter of public policy if the legislature sees

fit. It is not contended that there is any discrimination between companies in like circumstances.

Section 6 of the act provides for the exemption of income derived from business conducted in commerce between this state and the other states of the union, or foreign countries, to the extent to which the state is prohibited from taxing under the Constitution of the United States. This exemption would be implied if not expressed, and, as we see it, works no inequality. Salaries, pensions, and other emoluments, and interest or other earnings paid upon bonds or other securities of the United States or its agencies, to the extent that the state is prohibited from imposing a tax upon such income, are exempted. This again would be implied, if not expressed, and it works no inequality or exemption not permissible under the Federal Constitution, which, in respect to such requirement, affords the same protection as our own, and, therefore, if inequality there be, it would not be unconstitutional. It can hardly be said that the legislature has discriminated against one whom it has the power to tax, by failing to levy the same burden upon one whom it does not have the power to tax.

Taxes collected by the taxpayers as the agent of the state or of the United States are exempt, and we cannot conceive why they should not be. Gross income upon sales to the United States Government is exempt. Income from life insurance policies is exempt, which could be justified if need be upon the grounds of public policy.

Section 7 provides for the exception of certain classes from the provision of the act. Class A excepts insurance companies which pay more than one per cent under the provisions of the laws of the state. B excepts labor, agricultural, and other organizations not operated for profit; cemetery associations, and companies operated exclusively for the benefit of their members; fraternal societies operating under the lodge system and provid-

ing for the payment of death, sickness, or accident benefits; religious, charitable, and business leagues, chambers of commerce, boards of trade, civic leagues, and other organizations operated exclusively for the benefit of the community and for the promotion of social welfare.

The reason for the exception of the insurance companies is obvious. The provision operates equally upon all involved. The reasons for the other exceptions are too obvious for comment.

It is contended that the word "income," as used in the title of the act, is not broad enough to cover gross receipts or gross income within the intent of the act. But the term "gross income" is used in the title. This term is understood by lexicographers, and in common usage, to mean total receipts.

The law is intended to be general and to operate upon all residents of the state and all who derive revenue from sources within the state. It is clear that there is a sufficient basis for classifying some of those who are subject to the tax at a higher rate than others. As we are presently advised, there is no invalidity in any of the classifications, but if there were invalidity it would not make the act unconstitutional in its entirety, but merely require that those unlawfully affected should be taxed no higher than those with whom they are in like circumstances. If exemptions and exceptions were found to be invalid they would simply be inoperative, since the act provides that if any of its provisions are declared invalid they shall not affect the remainder of the act.

The act as a whole is clear, and we see no reason why it is not workable. The suggestion that it is so vague as to be impossible of interpretation, and therefore unconstitutional, does not appeal to us as worthy of serious consideration. There are numerous provisions for the operation and enforcement

of the act. It may develop that some of these need construction or interpretation, as is often the case with a comprehensive tax law, but, as we see it, could not conceivably require that the entire act be held unconstitutional.

We conclude that the law is constitutional.

Judgment affirmed.

Upon petition for rehearing, the opinion is modified, and a rehearing is denied.