**AZTAR INDIANA GAMING CORPORATION,**
Petitioner,

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0007–TA–89.

Tax Court of Indiana.

April 19, 2004.

Barton T. Sprunger, Mark J. Richards, Katrina M. Clingerman, Ice Miller, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Karen Hsu, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

Aztar Indiana Gaming Corporation (Aztar) challenges the final determination of the Indiana Department of State Revenue (Department) in which Aztar is assessed with additional Indiana adjusted gross income tax and supplemental net income tax liabilities for the years ending December 28, 1995, January 2, 1997, and January 1, 1998 (the years at issue). The matter is currently before the Court on the parties' cross-motions for summary judgment. The sole issue for the Court to decide is whether Indiana's Riverboat Wagering

Tax (RWT) is a state tax "based on or measured by income" for purposes of an add-back provision in Indiana's adjusted gross income tax law.[1]

## FACTS AND PROCEDURAL HISTORY

The material facts as they relate to this case are undisputed. Aztar is an Indiana corporation with its principal place of business in Evansville, Indiana. During the years at issue, Aztar, a licensed riverboat operator, operated an excursion gaming boat (as well as a hotel, restaurant, gift shop and related facilities) on the Ohio River.

Under Indiana's Adjusted Gross Income Tax Act of 1963 (the Act), Aztar was required to pay a tax of 3.4% on that portion of its "adjusted gross income derived from sources within Indiana." *See* IND.CODE ANN. § 6–3–2–1 (West 2000) (amended 2003). Aztar determined its adjusted gross income by making certain adjustments to its federal taxable income as calculated under § 63 of the Internal Revenue Code. *See* IND.CODE ANN. § 6–3–1–3.5(b) (West 2000) (amended 2003). One of these adjustments required Aztar to add back "any deduction or deductions allowed or allowable pursuant to Section 63 of the Internal Revenue Code *for taxes based on or measured by income* and levied at the state level by any state of the United States." A.I.C. § 6–3–1–3.5(b)(3) (emphasis added).

In calculating its federal taxable income for the years at issue, Aztar deducted the RWT it had paid to Indiana pursuant to Indiana Code § 4–33–13–1.[2] Because Aztar did not consider the RWT to be a tax "based on or measured by income," however, it did not add those taxes back to its federal taxable income when it calculated its Indiana adjusted gross income tax liability. The Department, after conducting an audit, determined this to be in error. As a result, the Department recalculated Aztar's federal taxable income by adding-back the RWT and issued proposed assessment notices for Indiana adjusted gross income tax and supplemental net income tax deficiencies for the years at issue.

On September 21, 1999, Aztar filed a protest with the Department. After holding an administrative hearing, the Department denied Aztar's protest in a Letter of Findings issued in June of 2000.[3]

Aztar initiated this original tax appeal on July 28, 2000. On November 28, 2000, Aztar filed a motion for summary judg-

---

1. Under Indiana's Adjusted Gross Income Tax Act of 1963, a tax is imposed on the adjusted gross income of a corporation. *See* IND.CODE ANN. §§ 6–3–1 to 6–3–7 (West 2000 & Supp. 2003). In turn, Indiana's Supplemental Corporate Net Income Tax Act imposed a tax on the net income of every corporation. *See* IND.CODE ANN. §§ 6–3–8–1 to 6–3–8–6 (West 1995) (repealed 2002). The term "net income" meant "adjusted gross income derived from sources within the state of Indiana, as determined in accordance with the provisions of IC 6–3–2–2" with further adjustments not pertinent to this case. A.I.C. § 6–3–8–2(b). Thus, the imposition of Indiana's supplemental net income tax was dependent upon determinations made in computing an Indiana adjusted gross income tax liability. A.I.C. § 6–3–8–5. *See also Indiana Dep't of State Reve-*

*nue v. Endress & Hauser, Inc.,* 404 N.E.2d 1173, 1175 (Ind.Ct.App.1980). Because a corporation without adjusted gross income would not have net income upon which to impose supplemental net income tax, *see id.,* the Court's discussion will focus on Indiana's adjusted gross income tax law that was in effect for the years at issue.

2. Neither party disputes the fact that the RWT is a state tax and is an allowable deduction under § 63 of the Internal Revenue Code.

3. Aztar's brief indicates the Department's Letter of Findings was issued June 30, 2000. The Department's brief indicates June 20, 2000.

ment. The Department filed a response brief on January 26, 2001.[4] The Court conducted a hearing on April 11, 2001. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court reviews final determinations of the Department *de novo.* IND. CODE ANN. § 6–8.1–5–1(h) (West 2003). Accordingly, it is bound by neither the evidence nor the issues presented at the administrative level. *Snyder v. Indiana Dep't of State Revenue,* 723 N.E.2d 487, 488 (Ind. Tax Ct.2000), *review denied.*

■ In addition, summary judgment is only appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Snyder,* 723 N.E.2d at 488. Cross motions for summary judgment do not alter this standard. *Williams v. Indiana Dep't of State Revenue,* 742 N.E.2d 562, 563 (Ind. Tax Ct.2001).

## DISCUSSION AND ANALYSIS

In 1993, the Indiana Gaming Commission was created and given statutory authority to issue licenses to conduct riverboat gambling within the state. IND.CODE ANN. § 4–33–3–1 (West 1993); IND.CODE ANN. § 4–33–6–1 (West 1993) (amended 1995).[5] In turn, all riverboat licensees are required to pay a daily tax (the RWT) "on the adjusted gross receipts received from gambling games ... at the rate of twenty percent (20%)[.]" IND.CODE ANN. § 4–33–

13–1(a) and (b) (West 1993) (amended 2002). "Adjusted gross receipts" means

(1) the total of all cash and property (including checks received by a licensee) whether collected or not, received by a licensee from gaming operations; minus

(2) the total of:

(A) all cash paid out as winnings to patrons; and

(B) uncollectible gaming receivables, not to exceed the lesser of:

(i) a reasonable provision for uncollectible patron checks received from gaming operations; or

(ii) two percent (2%) of the total of all sums, including checks, whether collected or not, less the amount paid out as winnings to patrons.

For purposes of this section, a counter or personal check that is invalid or unenforceable under this article is considered cash received by the licensee from gaming operations.

IND.CODE ANN. § 4–33–2–2 (West 1993) (amended 2003).

■ The sole issue in this case is whether the RWT is a tax that is "based on or measured by income." Aztar contends that in order for a tax to be "based on or measured by income," it must be a state income tax. (*See* Pet'r Br. In Support of [Its] Mot. for Summ. J. at 10.) Aztar explains, however, that the RWT is not a state income tax, but rather a tax upon the "exercise of the state-granted privilege of conducting authorized gaming." (Pet'r Br.

---

**4.** Although not captioned as a cross motion for summary judgment, the Department's response brief requests that summary judgment be entered in its favor. Pursuant to Indiana Trial Rule 56(B), summary judgment may be granted to the non-moving party. Therefore, the Court will treat the Department's request as a cross motion for summary judgment. See *Hunt Corp. v. Indiana Dep't of State Reve-*

*nue,* 709 N.E.2d 766, 767 n. 5 (Ind. Tax Ct.1999).

**5.** No more than eleven licenses may be issued at any one given time—five licenses are allocated for operation on Lake Michigan, five for on the Ohio River, and one for on Patoka Lake. *See* IND CODE ANN. § 4–33–6–1 (West 1993) (amended 1995).

In Support of [Its] Mot. for Summ. J. at 11, 15.) In other words, Aztar maintains that the RWT "is a traditional excise tax on wagering which is not even remotely similar to [an] ... 'income tax[ ].'" (Pet'r Br. In Support of [Its] Mot. for Summ. J. at 14.)

To support its argument, Aztar refers the Court to several statutory provisions which it believes clearly evidence the legislature's intent that the RWT be an excise tax as opposed to an income tax. First, Aztar explains, the Department's administrative authority extends, generally, to the administration, collection and enforcement of all "listed taxes" as set forth in Indiana Code § 6–8.1–1–1. Prior to 1993 (i.e., the enactment of the RWT), "listed taxes" included, *inter alia*, Indiana's gross income tax, adjusted gross income tax, supplemental net income tax, county adjusted gross income tax, and county option tax. *See* IND.CODE ANN. § 6–8.1–1–1 (West 1992) (amended 2002). At that same time, "income tax" was defined to "include[ ] the gross income tax, the adjusted gross income tax, the supplemental net income tax, the county adjusted gross income tax, and the county option income tax." *See* IND. CODE ANN. § 6–8.1–1–5 (West 1992) (repealed 2003) (internal citations omitted). Aztar asserts that when the legislature "updated" Indiana Code § 6–8.1–1–1 to include the RWT in 1993 (*see* App. to Br. In Supp. of Pet'r Mot. for Summ. J. at Ex. G; *see also* A.I.C. § 6–8.1–1–1 (West 2000) (amended 2002)), it did not amend the definition of "income tax" in Indiana Code § 6–8.1–1–5 to include the RWT. This, Aztar argues, "is an important indication" that the RWT is not an income tax. (Pet'r Br. In Supp. of [Its] Mot. for Summ. J. at 13.)

Aztar offers a similar argument with respect to the statutory provisions contained in Title 4, Chapter 13 of the Indiana Code. More specifically, Aztar explains that the RWT's imposition statutes are clearly and unambiguously titled "Wagering Taxes." *See* IND.CODE ANN. §§ 4–33–13–1 through –6 (West 1993 & Supp.2003). Aztar asserts that had the legislature intended the RWT to be an income tax, it would have titled Chapter 13 "Income Taxes." (*See* Pet'r Br. In Supp. of [Its] Mot. for Summ. J. at 13–14.) These arguments, however, miss the point.

In 1935, the Indiana Supreme Court recognized that there were two distinct classes of taxes: direct and indirect. *See Lutz v. Arnold,* 208 Ind. 480, 193 N.E. 840, 844 (1935). The distinction, the Court explained, rested upon whether the tax was imposed directly, or indirectly, on property. *See id.* Indeed, "[a]n excise tax [is] ... imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege, and that every form of tax not imposed directly upon property must constitute an excise if it is a valid tax of any description." *Id.* at 843–44 (citation omitted). In essence then, the Supreme Court announced that taxes were either property taxes (direct taxes) or nonproperty taxes (indirect taxes).

Later that same year, the Indiana Supreme Court examined the nature of the income tax created under the Gross Income Tax Act of 1933. *Miles v. Dep't of Treasury,* 209 Ind. 172, 199 N.E. 372 (1935). In so doing, the Court focused on whether the tax constituted a property tax or a non-property tax, stating:

> While there may be a 'theoretical distinction' or a 'very slight' difference between a net income tax and an excise [tax] measured by income, it is difficult to find any practical distinction to be made between a gross income tax and an ordinary excise tax. It is a tax 'on the recipient of the income, the tax being upon the right or ability to produce,

create, receive, and enjoy, and not upon specific property.'

\* \* \* \* \*

We conclude that the tax ... is an excise, levied upon those domiciled within the state or who derived income from sources within the state, upon the basis of the privilege of domicile or the privilege of transacting business within the state, and that the burden may reasonably be measured by the amount of income.

*Miles,* 199 N.E. at 377, 379.

■ Given these early holdings, it is clear that "an excise ... tax may be measured by a taxpayer's income without being construed as an income tax." *Indiana Dep't of State Revenue v. Fort Wayne Nat'l Corp.,* 649 N.E.2d 109, 111 (Ind. 1995), *cert. denied,* 516 U.S. 913, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995). Indeed, in 1991, the Indiana Supreme Court examined whether or not a Delaware corporation was required to add-back to its federal taxable income (for purposes of calculating its Indiana adjusted gross income tax liability) the taxes it had paid to West Virginia under that state's Business and Occupation Tax. In so doing, the Supreme Court explained that to determine whether a tax was "based on or measured by income" required a broader inquiry than merely asking whether a taxpayer was required to add-back "taxes on income." *See Consolidation Coal Co. v. Indiana Dep't of State Revenue,* 583 N.E.2d 1199, 1201 (Ind. 1991). Rather, the relevant inquiry was, as set forth in *Miles,* whether the tax to be added-back was measured by income as opposed to the value of property held. *See id.* at 1202.

In making that inquiry, the Supreme Court held that the West Virginia Business and Occupation Tax was an excise tax "measured by income." *Id.* More specifically, it explained:

West Virginia's Business and Occupation Tax law places a tax on the privilege of doing business in that state. "[T]here is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income...." During the years pertinent to this case, businesses extracting coal from West Virginia soil paid a tax of 3.5% on the "gross proceeds derived from the sale" of the coal, and an "additional tax" of .35% on the "gross proceeds[.]"... Under the B & O Tax law, the term "gross proceeds of sales" is defined as "the value ... actually proceeding from the sale of tangible property without any deduction on account of the cost of property sold or expenses of any kind." We take this to be a tax "measured by income[.]"

*Id.* (quotations in original, internal citations omitted). Thus, the Supreme Court determined that West Virginia's Business & Occupation Tax was subject to the add-back provision of Indiana Code § 6–3–1–3.5(b)(3). *Id.*

Eight years later, this Court analyzed whether the Michigan Single Business Tax (MSBT) was a tax "based on or measured by income." *See First Chicago NBD Corp. v. Indiana Dep't of State Revenue,* 708 N.E.2d 631 (Ind. Tax Ct.1999). In its analysis, the Court explained that the MSBT was a type of value added tax; in other words, it was a tax imposed, not on the price of a good sold, but rather on the "sum of the value of the raw materials, intermediate goods, labor, capital, and the profits which were combined to produce that final good." *Id.* at 633 (citation omitted). Consequently, while the first step in

calculating a taxpayer's MSBT liability was to determine its federal taxable income, numerous adjustments were then made to that figure. Indeed, corporate outlays such as wages, capital costs, and interest paid were *added to* federal taxable income.[6] *See id.* at 634.

The MSBT formula, the Court determined, was "therefore not designed to measure income but rather the value added through the production process." *Id.* "Although income is certainly one element of the MSBT, the transformation that occurs through the adjustments so radically alter the income element so as to make it impossible to conclude that the MSBT is 'based on or measured by income.'" *Id.* at 635 (footnote omitted). Accordingly, it concluded

> [t]he MSBT may start out with income, but after the extensive adjustments incorporated into the calculation of the MSBT, the MSBT becomes an entirely different tax, one that cannot be fairly read to fit under the "based on or measured by income" language chosen by the Indiana General Assembly.

*Id.* (footnote omitted).

In this case, it is clear that the RWT is an excise tax: it is not payable unless the privilege of conducting riverboat gambling is exercised and the exercising of those privileges is the occasion for the imposition of the tax. *See Fort Wayne Nat'l Corp.,* 649 N.E.2d at 111 (citing *Lutz,* 193 N.E. at 844). Nevertheless, it is an excise tax that is measured by income. Indeed, Aztar's RWT liability calculation is measured by the adjusted gross receipts it receives from its gaming operations: all cash and property received by Aztar from its gaming operations (minus certain adjustments) certainly constitute income to Aztar. *See* A.I.C. § 4–33–2–2. *See also* BLACK'S LAW DICTIONARY 766 (7th ed.) (defining income as "[t]he money or other form of payment that one receives ... from employment, business, investments, royalties, gifts, and the like"). Accordingly, Aztar's RWT liability is subject to the add-back provision of Indiana Code § 6–3–1–3.5(b)(3). The Department's final determination is therefore AFFIRMED.

## CONCLUSION

For the above stated reasons, the Court GRANTS summary judgment in favor of the Department and against Aztar. The parties shall bear their own costs.

---

**6.** "In contrast, a tax based on or measured by income would be calculated by *subtracting* such outlays in order to arrive at the income or profit made after the product is sold, and a tax measured by gross income or gross receipts would not add such outlays it would merely look to what the taxpayer received during that period." *First Chicago NBD Corp. v. Indiana Dep't of State Revenue,* 708 N.E.2d 631, 634 (Ind. Tax Ct.1999) (citation omitted; emphasis in original).