Owen *v.* Fletcher Savings & Trust Building Company.

[No. 14,358. Filed March 7, 1934. Rehearing denied June 28, 1934. Transfer denied November 19, 1934.]

*Samuel Ashby, W. H. Thompson, A. L. Rabb,* and *T. D. Stevenson,* for appellant.

*Baker & Daniels, Joseph J. Daniels, Donald S. Morris,* and *Paul N. Rowe,* for appellees.

WOOD, C. J.—May 10, 1912, the appellant entered into a written contract with Stoughton A. Fletcher and Albert E. Metzger under the terms of which she leased to them certain described real estate in the city of Indianapolis for a term of ninety-nine years. June 27, 1912, Fletcher and Metzger, by a writing executed on that date, assigned their interest in said lease to the appellee Fletcher Savings and Trust Building Company. February 12, 1919, the Fletcher Savings and Trust Building Company sublet the real estate and building which it had erected thereon, to its co-appellee, Fletcher Savings and Trust Company, for a period of fifteen years or until January 1, 1934.

Paragraph six of said lease provided in part as follows: "Sixth: That it is further covenanted and agreed that the lessee shall bear, pay and discharge, in addition to the rent and other payments herein agreed to be paid,

all taxes, assessments, benefits, rates, and levies of any name, nature and kind whatsoever, which may by any law of the United States of America, or of the State. of Indiana, or by order, resolution, ordinance, or other exercise of authority of the City of Indianapolis, or other municipality, or of any county or township, or of any board, department, commission or officer or body authorized so to do under any law of the United States of America, or of the State of Indiana, or otherwise, legally authorized, or in any other lawful manner whatsoever, be taxed, charged, assessed, levied, or imposed on said real estate, or on any and all buildings, or improvements thereon or that at any time during this lease may be thereon, *or which may be assessed upon the right of the lessor to receive the rentals hereunder during this lease,* and including taxes imposed upon said real estate and buildings and improvements thereon for the year 1912, and the last half of the taxes for the year 1911; and that the lessees are to obtain and deliver to said lessor original or duplicate tax receipts of all taxes, assessments and other payments required to be made by this item, of every kind and nature whatsoever, paid on said real estate or buildings, or improvements at any time thereon; that all such taxes, assessments and other payments required to be made by this item shall be paid and made out in the name of the lessor or her heirs, executors, administrators, or assigns, and said original or duplicate tax receipts shall be sent by mail to said lessor or to whomever she may direct in writing, not later than ten (10) days before the last day on which such taxes, assessments or other payments required to be made by this item are payable without being delinquent."

October 3, 1913, Congress, pursuant to authority vested in it by the 16th Amendment to the United States Constitution, enacted an income tax law, levying a tax

upon certain incomes therein designated from March 1, 1913. By the terms of this law, and the subsequent income tax laws enacted by Congress, the rent paid to appellant under the lease above referred to is income, on which an income tax must be paid.

After the 1913 income tax law was enacted a controversy developed between the appellant and the appellees pertaining to the construction to be placed upon the sixth paragraph of the lease; whether by its provisions, the duty rested upon the appellant to pay the income taxes charged against the rent paid to her by the appellees, or whether the appellees should in addition to paying the rent, also pay the income taxes charged against it, thereby indemnifying and saving the appellant harmless from any liability therefor.

For the purpose of obtaining a declaratory judgment or decree of the court respecting the duties and obligations of the appellant and appellees under the sixth paragraph of the lease, the appellees filed complaint under the "Uniform Declaratory Judgment Act," Acts 1927, p. 208, alleging facts as above briefly summarized.

Appellant filed a demurrer to this complaint alleging as causes therefor, (1) want of jurisdiction of the court over the subject matter of the action, and (2) insufficiency of facts to state a cause of action.

The first six paragraphs of memoranda in support of this demurrer questioned the constitutionality of the "Uniform Declaratory Judgment Act." Appellant does not discuss any of the questions presented by these paragraphs of memoranda in her brief so they are waived. The remainder of the paragraphs of memoranda are as follows:

"7. The lease and written instrument set out in and made a part of plaintiff's complaint requires the payment by the lessees therein named and their assignees, of all income taxes levied or assessed pursuant to any

law of the United States of America on account of the real estate therein demised and the rent to be received under the terms of said lease; and the complaint therefore shows on its face that under no circumstances could the plaintiffs be entitled to any judgment or decree establishing any right to exemption from the payment of such income taxes.

"8. The averments of plaintiff's complaint show that they are obligated to pay all Federal income taxes on account of rentals due or received by the defendant on account of the real estate described in said written lease and that therefore the plaintiffs are not entitled to any judgment which would relieve them from the payment of such income taxes or any part thereof.

"9. The income tax which is imposed under the Federal Income Tax Law is in effect an assessment or tax against the real estate itself and under the terms of the lease referred to in plaintiff's complaint, they are liable for such income tax.

"10. The facts alleged in plaintiff's complaint show that the plaintiffs are liable to the defendant for all income taxes imposed or assessed by the United States against the defendant on account of rent received under the lease referred to in plaintiff's complaint.

"11. Plaintiff's complaint contains no averment of fact showing any liability whatever on the part of the defendant to the plaintiffs or either of them for any reason."

This demurrer was overruled.

Appellants filed an answer in four paragraphs, the first was a general denial, the second paragraph alleged that the court had no jurisdiction of the subject matter of the action; that there was no existing controversy between the parties; that the appellees did not seek the redress or prevention of a wrong or the enforcement of a right; that there had been no violation of any of

the terms of the contract; that it had been fully carried out and that there was no threatened breach by any of the parties thereto. The third paragraph alleged the execution of the lease and its assignment by the original lessees to the Fletcher Savings and Trust Building Company; that under the terms of the lease and its assignment to said appellee, it should be adjudged and decreed by the court that the Fletcher Savings and Trust Building Company was liable to pay the income tax. The fourth paragraph alleged that at the time of the execution of the lease in question the 16th Amendment to the Constitution of the United States was in process of adoption and became effective February 25, 1913; that at the time of the execution of the lease it was not known whether the amendment would be adopted or what form legislation enacted by Congress would take; that prior to the execution of the lease it was agreed by the parties that the written lease should be drafted, so that the lessees and their successors or assignees would be obligated to pay any federal income tax on account of rentals due or received by terms of said lease; that if there was any ambiguity in said lease, particularly as to paragraph six, it should be construed and interpreted pursuant to said oral contract between the parties.

Appellees filed a demurrer to the second, third, and fourth paragraphs of said answer for insufficiency of facts to constitute a defense to their complaint. The memorandum in support of the demurrer to the second paragraph of answer alleged, in substance, that no affirmative facts were set out, but the paragraph of answer was only a statement of legal propositions, arguments, and conclusions, in reality a demurrer seeking to raise the question of jurisdiction of the court, which had already been presented by appellant's demurrer to the complaint and passed upon adversely to her. The

memorandum in support of the demurrer to the third paragraph of answer alleged, in substance, that there was no allegation of fact other than those contained in appellee's complaint, and was a conclusion of law that the appellee Fletcher Savings and Trust Building Company was obligated to pay federal income taxes on account of rentals received by appellant; that it failed to show wherein either of the appellees were bound to pay federal income taxes on account of rentals due or received by appellant on the real estate described in the lease, but on the contrary, said paragraph of answer, and the lease which was made an exhibit thereto, showed that there was no obligation upon the appellees to pay such income tax. The memorandum in support of the demurrer to the fourth paragraph of answer alleged, in substance, that appellant was seeking to set up as a defense to appellee's complaint, oral negotiations had before the consummation and execution of the written lease; that the terms of the lease were not ambiguous; that if they were, they must be resolved in favor of the appellees, lessees; that said paragraph sought to alter the terms of a written contract, without seeking reformation thereof; and that appellees could not be bound by any such oral agreement, inasmuch as there was no allegation in the paragraph of answer, that appellees had knowledge thereof. This demurrer was sustained to each of said paragraphs of answer.

Upon the issues as thus formed, the cause was submitted to the court for trial, without a jury, resulting in a finding and judgment for the appellees. Appellant filed a motion to modify the judgment in certain particulars. This motion was overruled. Appellant then filed a motion for a new trial, the only proper causes for a new trial alleged therein being that the decision of the court was not sustained by sufficient evidence; that the decision of the court is contrary to law; and error of

the court in refusing to permit a witness tendered by the appellant to answer certain questions propounded to him on direct examination. This motion was overruled. Appellant appeals to this court assigning the following errors for reversal: (1) The court erred in overruling appellant's demurrer to appellee's complaint; (2) the court erred in sustaining appellee's demurrer to appellant's second paragraph of answer; (3) the court erred in sustaining appellee's demurrer to appellant's third paragraph of answer; (4) the court erred in sustaining appellee's demurrer to appellant's fourth paragraph of answer; (5) the court erred in overruling appellant's motion to modify the judgment; (6) the court erred in overruling appellant's motion for a new trial.

All facts were stipulated, except facts which the appellant sought to show by parol testimony to the effect that, prior to the execution of the written lease, it was agreed between the parties thereto that the same should be drafted so that the lessees and their successors or assigns would be obligated to pay any federal income tax on account of rentals due or received because of said lease, which parol testimony was excluded by the court on objection of the appellees.

The first three assignments of error involve substantially the same questions and will be considered together.

The appellant contends that no actual controversy within the purview of the "Uniform Declaratory Judgment Act" is shown by the pleadings or proof in the case now under consideration. We cannot agree with this contention.

Section 1 of the "Uniform Declaratory Judgment Act," Acts 1927, ch. 81, p. 208, §3-1101, Burns 1933, §438, Baldwin's 1934, provides: "That courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree." Section 2 provides that, "Any person interested under a deed, will, written contract or other writing constituting a contract . . . may have determined any question of construction or validity arising under the instrument . . . (or) contract . . . and obtain a declaration of rights, status or other legal relations thereunder." Section 3 provides that, "A contract may be construed either before or after there has been a breach thereof." Section 5 provides that, "The enumeration in sections 2, 3, and 4 does not limit or restrict the exercise of the general powers conferred in section 1, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." Section 12 provides that, "This act is declared to be remedial; its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

What constitutes an actual controversy which will entitle parties to invoke the remedy offered by the declaratory judgment act was announced in the case of *Zoercher* v. *Agler* (1930), 202 Ind. 214, 221, 172 N. E. 186, 70 A. L. R. 1232, in the following language: "It is also true under the Uniform Declaratory Judgments Acts (now in effect in more than twenty states, 111 Ind. Law Jour. 353) that the person bringing the action must have a substantial present interest in the relief sought, such as there must exist not merely a theoretical question or controversy but a real or actual controversy, or at least the ripening seeds of such a

controversy, and that a question has arisen affecting such right which ought to be decided in order to safeguard such right." See authorities cited in that case. The Supreme Court of Pennsylvania in the case of *Cryan's Estate* (1903), 301 Pa. 386, 394, 152 Atl. 675, 71 A. L. R. 1417, after having reviewed the decisions of its own court, where the right to resort to the Declaratory Judgment Act was before the court, said, "Jurisdiction (by declaratory judgment) . . . will never be assumed unless the tribunal appealed to is satisfied that an actual controversy or the *ripening seeds of one exist.* . . . (citing authorities). In the Pittsburgh Charter Case we explained that 'ripening seeds' meant a state of facts indicating 'imminent' and 'inevitable' litigation. (Citing authority.) If differences between the parties concerned, as to their legal rights, have reached the state of antagonistic claims, which are being actively pressed on one side and opposed on the other, an actual controversy appears; where, however, the claims of the several parties in interest, while not having reached that active stage, are nevertheless present, and indicative of threatened litigation in the immediate future, which seems unavoidable, the ripening seeds of a controversy appear."

The complaint alleges and the stipulated facts show that immediately after the enactment of the income tax law in October, 1913, a real controversy developed between the appellant and the appellees regarding their respective rights and duties under the written lease, concerning the payment of the income tax on the rent payable to and received by the appellant. It was not a theoretical question, based upon mere theory or speculation, which confronted the trial court, but a real dispute, and contest, in which the parties took issue with each other, concerning their obligations, one toward the other, under the terms of an actual existing

contract. Issues were tendered between the parties as adversaries, seeking an adjudication of their legal rights under the contract. It was not an attempt to secure an abstract determination of legal rights or a decision advising what the law would be on an uncertain or hypothetical state of facts, but the appellees were seeking a final adjudication of legal rights. The record presents such a case for judicial determination as was contemplated by the legislature when it passed the Uniform Declaratory Judgment Act and it was properly brought thereunder. *Nashville, etc., Ry. Co.* v. *Wallace* (1933), 288 U. S. 249, 77 L. Ed. 730. In the case of *Robinson* v. *Moser* (1931), 203 Ind. 66, 179 N. E. 270, where the constitutionality of a statute seeking to postpone the election of prosecuting attorneys in certain judicial circuits in the state was involved, the rights of the opposing claimants to the office were determined under the Declaratory Judgment Act. For a discussion of the Declaratory Judgment Act, see *Hess* v. *Country Club Park, etc.* (1931), 213 Cal. 613, 2 Pac. (2nd) 782.

The determinative question presented by the record in the instant case is, whether that clause of paragraph six of the lease heretofore italicized is sufficiently broad to include income taxes due the United States government, upon the rents to be paid to the appellant, by the appellees. The literal words used in this contract have not been subject to judicial construction. The appellant contends that they should be given special force and significance, indicating the purpose and intent of the parties, to require the original lessees, their successors, or assigns, to pay the income tax on the rent received by the appellant, in view of the fact that, at the time the lease was entered into, the 16th Amendment to the Federal Constitution was in process of adoption.

An income tax is distinguished from other forms of taxation in that it is not levied upon property nor upon

the operation of a trade, or business, or subjects employed therein, nor upon the practice of a profession, the pursuit of a trade or calling, but upon the acquisitions of the taxpayer arising from one or more of these sources or from all combined. It is not a tax on property, and a tax on property does not embrace income. Black, Income and Federal Tax, Secs. 1 and 2. "An income tax is an assessment upon the income of the person and not upon any particular property from which that income is derived." *Young* v. *Illinois Athletic Club* (1923), 310 Ill. 75, 141 N. E. 369, 30 A. L. R. 985. "The tax has been defined as a tax on the person, measured by his ability to pay (on) his net income, and as a tax on the income itself." Holmes Federal Taxes, 6th Ed., Sec. 25, and authorities there cited. *Tax Commissioners* v. *Putnam* (1917), 227 Mass. 522, 116 N. E. 904, 26 R. C. L., p. 141, sec. 116.

"The general rule is that, unless the covenants of the lease expressly provide that lessee shall pay the income tax that may be required of the lessor on the rentals received by him from the lessee, the lease will not be enlarged by reading therein an obligation on the part of the lessee to pay any part of the lessor's income tax —the principle *'expressio unius est exclusio alterius,'* applying where the lease specifically designates the taxes which the lessee is to pay." *Republic Building* v. *Gaertner* (1923), 201 Ky. 509, 512, 256 S. W. 1111, 30 A. L. R. 982; *Brainard* v. *New York Cent. Ry. Co.* (1926), 242 N. Y. Court of Appeals 125, 151 N. E. 152. In the case of *Young* v. *Illinois Athletic Club, supra,* p. 82, the court expresses itself in this language: "It has been the universal holding of courts considering the question, so far as we are able to find, that unless the lease expressly provides for the payment of taxes on the income or rentals received under the lease the imposition of such burden on the lessee is not justified." This lan-

guage was quoted with approval in *Illinois Cent. Ry. Co.* v. *Indianapolis, etc., Ry. Co.* (1925), 6 Fed. (2nd) 830.

In support of her contention, the appellant cites *Suter* v. *Jordan Marsh Co.* (1916), 225 Mass. 34, 113 N. E. 580; *Kimball* v. *Cotting* (1918), 229 Mass. 541, 118 N. E. 866; *Republic Bldg.* v. *Gaertner, supra; Pennsylvania R. Co.* v. *Philadelphia R. Co.* (1919), 263 Pa. 561, 107 Atl. 100; *Ehrlich* v. *Brogan* (1918), 262 Pa. 362, 105 Atl. 511; *Philadelphia G. & N. Co.* v. *Philadelphia R. Co.* (1919), 265 Pa. 325, 108 Atl. 528. The facts set out in these cases disclose that in each instance there was an express condition in the lease, under which the lessee agreed to pay the taxes and assessments upon the rent reserved and paid to the lessor.

In the case of *Van Rensselaer* v. *Dennison* (1850), 8 Barb. (N. Y.) 23, the lease provided that the lessee should pay and discharge all taxes, charges, and assessments, ordinary or extraordinary, taxed, charged, or assessed to or upon the premises or any part thereof, or upon the lessor, his heirs, executors, or assigns, by any act of the legislature, by county rates, or otherwise, howsoever for or in respect of said premises or any part thereof. A New York statute required the lessor to pay taxes on the rentals received under this lease. In holding that the lessee was not liable under the terms of this lease to pay the income tax assessed against the lessor, the court said (p. 27) : "The value of the premises had no influence in regulating the amount of the tax. The rent reserved might be a high one on a poor farm, or a low one on a valuable farm. The farm was never appraised, nor its value estimated. The tax was laid without reference to the farm, and in no sense 'in respect of the premises,' or their value. It was the income of the person which was taxed, at a uniform value, prescribed by the statute. Suppose a general income tax should be laid, and the plaintiff in this case

should be assessed for his whole income; could he collect a part of the tax from the defendant, under this covenant, because a portion of his income was rent of the defendant's farm? I think not; nor do I see how the cases would differ in principle. In both it would be a tax on the income alone." This case has been frequently referred to and quoted with approval by the courts in discussing the burden of the payment of income tax, where it has become a controverted question between lessor and lessee.

In *Park Building Co.* v. *George P. Yost Fur Co.* (1919), 208 Mich. 349, 175 N. W. 431, the lessee agreed to pay all taxes of every kind and nature which might be levied or imposed upon the premises or any buildings or improvements thereupon, "and any personal tax levied or assessed upon said party of the first part which may be assessed, levied or imposed upon the leasehold estate hereby created, and upon the reversionary estate in said premises . . . the intent hereof being to insure to said party of the first part a net rental hereunder, not chargeable with any burdens by way of taxes, or otherwise, resulting in the diminution of the same." It was held in this case after a thorough and exhaustive review of the authorities and discussion of the problem, that the language above quoted did not require the lessee to pay the income tax on the rent received by the lessor.

In *Young* v. *Illinois Athletic Club, supra,* the lessee covenanted to pay as additional rent, all taxes, assessments and municipal or governmental charges, general and special, ordinary and extraordinary, of every nature and kind whatsoever "(b) levied, imposed or assessed upon any interest of the lessor in or under the lease; (c) which the lessor shall be required to pay by reason of or on account of his interest in the real estate hereby demised and the improvements on said real estate."

The contention was that the terms of the lease required the lessee to pay the income tax levied against the lessor on rent received under the lease. The court concluded its opinion on this phase of the case with this statement (p. 83) : "Whether the lessor is to pay an income tax at all depends not alone upon his interest in the property, but is affected by his income or rentals from any source; and likewise his loss arising from totally different sources, as the income tax must be assessed against the income after deducting losses without regard to the sources of such loss. This is repugnant to the idea of a tax against the property itself. Such tax is not a tax against the real estate and under the holding in the *Buck & Rayner Case, supra,* cannot, in the absence of terms which expressly or by clear implication include it, be made a part of a covenant in a lease. We are of the opinion that it was not the intention of the parties to this lease that the income tax levied on the rentals should be paid by the lessee."

The covenant concerning payment of taxes in the case of *Catawissa R. Co.* v. *Philadelphia, etc., Co.* (1916), 255 Pa. 269, 270, 99 Atl. 807, reads in part as follows: "The railway company shall and will also punctually and faithfully pay all taxes, charges, and assessments which, . . . shall be assessed or imposed under any existing or future law on the demised premises or any part thereof, or on the business there carried on, or on the receipts, gross or net, derived therefrom, or upon the said several issues of bonds or the interest thereon, or upon the capital stock of the Catawissa Company or the dividends thereon, or upon the franchises of said company." In construing this clause of the lease the court said, "The income tax was not imposed by the government upon 'the demised premises or any part thereof,' nor 'on the business there carried on,' nor 'on the receipts, gross or net, derived there-

from,' nor upon the 'issues of bonds or the interest thereon,' nor 'upon the capital stock of the Catawissa Company, or the dividends thereon,' nor 'upon the franchises of said company.' It was imposed upon rental received by the lessor from the lessee; but what is to be found in the lease from which it is to be inferred that the intention of the parties to it was that the lessee was to pay any taxes that might be assessed on what it paid as rent?"

In *Stony Brook R. Corp.* v. *Boston & Maine R. R.* (1927), 260 Mass. 379, 380, 157 N. E. 607, the lease provided that "Said second party (the lessee) further agrees that it will pay all public taxes, assessments and charges whatsoever on the property, franchise or capital stock of said first party (the lessor) that shall be placed or assessed upon said first party or upon its stockholders. . . ." The court, after a resume of many authorities, held that the lease did not impose the payment of income tax assessed against the lessor upon the lessee.

Appellant relies upon the case of *Pollock* v. *Farmers' etc., Co.* (1895), 157 U. S. 429, 158 U. S. 601, 39 L. Ed. 759, 39 L. Ed. 1108, as supporting their position that an income tax upon rentals is a direct tax upon the real estate and that therefore the appellees should pay the income tax assessed against appellant on the rent paid to her by them. This case is distinguished most aptly by the Supreme Court of Illinois in the case of *Young* v. *Illinois Athletic Club, supra* (p. 80), in the following language: "In the Pollock case, which is strongly relied upon by appellant, the question before the court was whether or not a tax on the rentals derived from real estate is a direct tax. The decision of that case related to the constitutional powers of Congress to pass an income tax law, and it was held that such taxation was direct and not indirect within the meaning of the Con-

stitution, and the Income Tax Law was therefore held unconstitutional. But the court, as indicated by the language in its opinion on rehearing (citing authorities) 'went no farther as to the tax on the income from real estate than to hold that it fell within the same class as the source whence the income was derived, that is, that a tax upon the realty and a tax upon the receipts therefrom was alike direct.' The issue arising in the Pollock cases, therefore, was not whether an income tax was a tax on real estate or an interest therein, but whether such tax based on rentals was a direct tax and therefore within the prohibition of the Constitution."

An examination of the lease under discussion leads to the inevitable conclusion that it was prepared with much care and with the purpose in mind of anticipating and providing for every contingency or circumstance at that time existing or which might develop during the long term of ninety-nine years. To ascertain the true intent and purpose of the parties relating to the subject of taxation, it is necessary to give consideration to all the language contained in paragraph six, where all the covenants having to do with taxes and their payment are set out with particularity and in detail. We are also permitted to assume that the lease was written with knowledge of the tax laws then in existence, and such as might reasonably be anticipated, which would include a federal income tax law, in view of the fact that such a law had long been demanded and at the time of the preparation of the lease, the sixteenth amendment to the United States Constitution, authorizing Congress to enact an income tax law, was in process of adoption. With these various beacon lights to guide them, the lease was prepared. Nowhere is an income tax expressly mentioned or referred to. If the parties contemplated or intended that the lessee should pay the income tax assessed against the lessor on rent received by her under

the lease, such a condition could, and evidently would have been inserted in the lease by the use of a few simple, plain words, thereby eliminating any uncertainty. It is also significant that there is no net rental clause in this lease. To expand the meaning of the clause, "or which may be assessed upon the right of the lessor to receive the rentals hereunder during this lease" to include the payment of taxes upon the personal income of the lessor by the lessee, would require us to ignore the rules of construction which have been followed by the courts of other jurisdictions under like circumstances. Income tax is assessed against the personal income received by the payer. *Brady* v. *Anderson* (1917), 240 Fed. 665. We have not found any authority holding that it is in the nature of an excise tax or an embargo on the right to receive income, and that is undoubtedly what the parties had in mind when they employed the language above quoted. "It must be presumed that the lease in question was drafted in view of the general fund of knowledge of the time. The parties were not attempting to guard against a recondite type of taxation to be evolved in the future. Income taxes have existed for many years in some form. The name was at hand if the parties had wanted to use it. Some experience was also available. Sweeping language also might have been used without attempt at speculation, if that had been the purpose of the parties . . . In these circumstances the omission of the word 'income' from the examination of subjects of taxation assumed by the lessee is not without significance. . . . We feel constrained to the view that the clause of the lease in question does not impose on the lessee the obligation to pay the income tax assessed on the lessor and here in issue." *Boston, etc., Corp.* v. *Old Colony R. Co.* (1929), 269 Mass. 190, 169 N. E. 157.

Furthermore, this clause is used in connection with

the assessment and payment of taxes upon the real estate and improvements thereon, it being provided how and when the lessee must pay the various kinds of taxes and thus prevent them from going delinquent. It reads: "That all such taxes, assessments and other payments required to be made by this item shall be paid and made out in the name of the lessor or her heirs, executors, administrators or assigns, and said original or duplicate tax receipts shall be sent by mail to said lessor or to whomever she may direct in writing, not later than ten (10) days before the last day on which such taxes, assessments and other payments required to be made by this item are payable without being delinquent." The Supreme Court of Missouri in the case of *Missouri, etc., Ass'n.* v. *Delk Investment Corp.* (1929), 323 Mo. 765, 20 S. W. (2nd) 51, 54, in commenting upon similar language used in a lease before it for consideration, said: "Thereby the lessee agreed to produce the receipts for all taxes, levies, and assessments required to be paid by him under the lease, before the same became delinquent. But this requirement clearly could have no reference to income taxes assessed against the net income of the lessor. The covenant as we construe it has reference to taxes assessed against the property or the rental thereof. There is no sort of theory under which it could have been intended that the lessee should pay, and produce a receipt, for the income of the lessor before that tax became delinquent, when it is considered that the lessor's income tax depended upon ascertainment of lessor's entire income, from which were to be taken all allowable deductions peculiar to the lessor. All the provisions considered together force upon us the conclusion that this lease does not require the lessee shall pay any part of the income taxes to the state and federal governments assessed against the lessor upon the lessor's net income."

Appellant insists that the court erred in sustaining appellee's demurrer to her fourth paragraph of answer in which she alleged that it was agreed by all parties prior to the execution of the lease that it should be so drafted as to obligate the lessees to pay all federal income taxes on account of rentals paid to appellant; that if there was any ambiguity in respect to paragraph six of the lease it should be construed in view of such oral agreement. There were no allegations of fraud, misrepresentation, accident, or mistake in the negotiation leading up to or in the writing of the contract. This is not a case where the rule permitting the introduction of parol evidence to be introduced for the purpose of enabling the court to construe an ambiguous contract can be resorted to. The lease here, when all its terms are considered together, is capable of construction without resort being had to parol testimony. What the appellant endeavored to do by the fourth paragraph of her answer and the proof which she hoped to introduce in support of the same, was not to remove any ambiguity existing in the written contract, but to ingraft thereon by parol testimony, a condition, which was not written therein. This, the courts will not permit. *Johnson* v. *Griest* (1882), 85 Ind. 503; *Hardin* v. *Sweeney* (1913), 54 Ind. App. 614, 103 N. E. 115; *National Etc. Co.* v. *Imperishable Etc. Co.* (1916), 63 Ind. App. 183, 112 N. E. 403; *Elliott* v. *Wiem* (1924), 305 Mo. 105, 264 S. W. 391.

What we have already said disposes of the questions presented by the motion to modify the judgment and the motion for a new trial. Finding no error the judgment is affirmed.