**UNITED STATES STEEL CORPORA-TION, Appellant (Plaintiff Below),**

v.

**NORTHERN INDIANA PUBLIC SER-VICE COMPANY, INC.; Public Service Commission of the State of Indiana; and the State of Indiana, Appellees (Defendants Below),**

**and**

**Office of the Utility Consumer Counsel-or, Appellee (Intervenor-Defendant Below).**

**No. 2–385A80.**

Court of Appeals of Indiana, Fourth District.

Sept. 11, 1985.

John F. Wickes, Jr., Lynne D. Lidke, Scopelitis & Garvin, Indianapolis, Wayne L. Emery, Rafael Caminero, U.S. Steel Corp., Pittsburgh, Pa., for appellant.

Linley E. Pearson, Atty. Gen., Robert K. Johnson, Deputy Atty. Gen., Indianapolis, for appellee Public Service Com'n of Indiana.

Frederick F. Eichhorn, Jr., David C. Jensen, James K. Morse, Eichhorn, Eichhorn & Link, Hammond, for appellee Northern Indiana Public Service Co.

CONOVER, Judge.

United States Steel Corporation (U.S. Steel) appeals the Marion Superior Court's dismissal of its complaint for declaratory judgment.

Reversed.

ISSUES

This appeal presents a single issue:

whether the trial court has subject matter jurisdiction of this action.

FACTS

U.S. Steel, a Delaware Corporation, owns two steel production facilities of interest here, Gary Works located in Gary, Indiana, and South Works in Chicago, Illinois. Northern Indiana Public Service Company (NIPSCO), an Indiana public utility, furnishes electric power to Gary Works, and Commonwealth Edison Company (Commonwealth), an Illinois public utility, furnishes electric power to South Works.

U.S. Steel also owns electric transmission facilities and transmission lines which are located on a right-of-way it leases between these two steel plants. Currently, however, NIPSCO supplies all the electric power for Gary Works, and Commonwealth the power for South Works. U.S. Steel proposes to transmit and "mix" some of the electric power it purchases from each of these public utilities for use at these plants, that is, power purchased from Commonwealth will be transmitted and mixed with NIPSCO's for use at Gary Works, and vice-versa. To do so, however, U.S. Steel must install a "phase shift transformer" (transformer) to bring "out of phase" electricity generated by one utility "in phase" with the electricity generated by the other.[1]

The electric power thus mixed and transmitted would be used solely by U.S. Steel at its two plants. None would be distributed by it to other users or the general public.

U.S. Steel has expended substantial sums of money conducting a feasibility study and preparing to receive and transmit electricity to and from its proposed transformer and plants. It filed a two-count complaint in the court below for declaratory judgment under the Declaratory Judgments Act, IND.CODE 34–4–10–1 to 16. Count I sought a declaration the proposed sale of electricity by Commonwealth to South Works and the transmission thereof through its own transmission facilities to Gary Works would not violate the Indiana Service Area Assignment Statute. Count II sought a declaration

(a) determining the rights and obligations of the parties,

(b) neither U.S. Steel nor Commonwealth would become public utilities under Indiana law,

(c) the Public Service Commission of Indiana (PSCI) would have no jurisdiction, right, power or interest over the transmission of electricity in such fashion, and

(d) use of the transformer would not violate the Public Service Commission Act, I.C. 8–1–2–1, et seq.

After appearances were entered and the Office of the Utility Consumer Counselor permitted to intervene, Ind. Rules of Procedure, Trial Rule 12(B)(1) motions to dismiss[2] challenging the trial court's subject matter jurisdiction were filed by the PSCI and the Consumer Counselor. They were granted by the trial court, but it assigned no reasons for its action.

These 12(B)(1) motions, in essence, asserted the trial court lacked subject matter jurisdiction because

---

1. Before the waves of electricity transmitted by each utility can be mixed, they must be in the same pattern and formation, and moving in the same direction. This mixing can be accomplished only by means of the transformer U.S. Steel proposes to build and install.

2. T.R. 12(B) provides
   (B) How Presented. Every defense, in law or fact, to a claim for relief in any pleading ... may be made by motion:
   (1) Lack of jurisdiction over the subject matter, ...

(a) the PSCI had exclusive jurisdiction of this claim,

(b) U.S. Steel had failed to exhaust its administrative remedies, and

(c) had such remedies been exhausted, jurisdiction thereof would lay with the Indiana Court of Appeals under I.C. 8–1–3–1 et seq., not the trial court. This is a case of first impression.

## DISCUSSION AND DECISION

### I.

#### Standard of Review

■ The trial court made its ruling based upon the complaint's allegations, its prayers for relief, and the law applicable thereto. No fact-sensitive supporting materials were filed, *cf. Cooper v. County Board of Review of Grant County* (1971), 150 Ind.App. 232, 276 N.E.2d 533, 536. On appeal in T.R. 12(B)(1) cases so postured, we accept the facts as alleged in the complaint as true, as in T.R. 12(B)(6) cases, *cf. Iglesias v. Wells* (1982), Ind.App., 441 N.E.2d 1017, 1018. The defense of lack of jurisdiction of the subject matter cannot be waived, and may be raised by the parties or the court at anytime including appeal. *Cooper*, 276 N.E.2d at 536. Because the facts are not in dispute and we *sua sponte* could have raised the subject matter jurisdiction question ourselves, we are in as good a position as the trial court to determine it.

The simple question we must answer is whether jurisdiction of this declaratory judgment action lies with the trial court under the terms of the Declaratory Judgments Act, IND. CODE 34–4–10–1 et seq., or with appellee PSCI under the terms of the Public Service Commission Acts of 1913 and 1941, I.C. 8–1–2–1 et seq., and I.C. 8–1–1–1 et seq.

### II.

#### The Declaratory Judgment Act

I.C. 34–4–10–1 reads

Courts of record within their respective jurisdiction shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree.

See, also, T.R. 57. Regarding persons who may obtain declaratory judgments, I.C. 34–4–10–2 reads in part

Any person ... whose *rights, status* or *other legal relations are affected by a statute,* ..., may have determined any question of construction or validity arising under the ... statute, ... and obtain a declaration of rights, status or other legal relations thereunder. (Emphasis supplied).

Discussing the purpose for enactment of the Declaratory Judgments Act, our First District, speaking through Robertson, J., recently said

The purpose of a declaratory judgment action and a declaratory judgment statute is to quiet and stabilize legal relations and thereby provide a remedy in a case or controversy when there is still an opportunity for peaceable judicial settlement. 1 W. Anderson, Actions for Declaratory Judgments § 187 (2d ed. 1951). The Uniform Declaratory Judgment Act, found at Ind.Code 34–4–10–1, *et seq.*, is remedial in nature, affording relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered. IC 34–4–10–12; *Owen v. Fletcher Savings & Trust Bldg. Co.,* (1934) 99 Ind.App. 365, 189 N.E. 173. The declaratory judgment statute was not intended to eliminate well-known causes of action nor to substitute an appellate court for a tribunal of original jurisdiction, where the issues are ripe for litigation through the usual processes. *Brindley et al. v. Meara et al.,* (1935) 209 Ind. 144, 198 N.E. 301. Such statute was intended to furnish a full and ade-

quate remedy where none existed before and it should not be resorted to where there is no necessity for such a judgment. *Rainwater v. Merriman,* (1957) 127 Ind.App. 520, 142 N.E.2d 467; *Bryarly v. State,* (1953) 232 Ind. 47, 111 N.E.2d 277. The use of a declaratory judgment is discretionary with the court and is usually unnecessary where a full and adequate remedy is already provided by another form of action. *Brindley, supra.* However, according to T.R. 57 on Declaratory Judgments, "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

In determining the propriety of declaratory relief, the test to be applied is whether the issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether or not another remedy is more effective or efficient. *Smith v. Vowell,* 379 F.Supp. 139 (W.D.Tex.1974). ... The determinative factor is whether the declaratory action will result in a just and more expeditious and economical determination of the entire controversy. *Fireman's Insurance Company of Newark, N.J. v. Riley,* 322 F.Supp. 349 (W.D. Ky.1971).

*Volkswagenwerk, A.G. v. Watson* (1979), 181 Ind.App. 155, 390 N.E.2d 1082, 1084–85. Applying the propriety test it is apparent a declaratory judgment in this case would be appropriate because it will determine whether U.S. Steel and Commonwealth would become public utilities under Indiana law upon completion of the project, and subject to the PSCI's jurisdiction under our various statutes regulating public utilities. Such judgment would solve U.S. Steel's problem (whether to proceed further with its costly project) by declaring its rights and status as an Indiana public utility. It appears U.S. Steel is hesitant to expend further funds on this project if it or Commonwealth will become subject to

PSCI regulation or Indiana's regulatory statutes in this area.

No other action concerning this subject matter is pending. If no other remedy is available, and the trial court has subject matter jurisdiction, entry of a declaratory judgment, subject to exercise of the trial court's sound discretion,[3] seems appropriate in this case. We have combined our discussion of whether another remedy is available with our discussion of subject matter jurisdiction.

### III.

### *PSCI Does Not Have Jurisdiction of Subject Matter*

■ The PSCI would not acquire jurisdiction of U.S. Steel or Commonwealth if U.S. Steel's project were completed because neither would be "public utilities", as those terms are defined in the Public Service Commission Act itself, and as our Supreme Court has interpreted that Act's applicability in cases such as this.

### A.  *Commonwealth*

Commonwealth sells and delivers its electricity to U.S. Steel at South Works in Illinois. In that state, electricity is a valuable article of merchandise, bought and sold like other personal property. *People v. Menagas* (1937), 367 Ill. 330, 11 N.E.2d 403, 406–07. Based upon the facts before us, Commonwealth and U.S. Steel apparently intend title to Commonwealth's electric power to pass to U.S. Steel upon its delivery to South Works. At that point, the electricity becomes U.S. Steel's property. Because Commonwealth owns no facilities in Indiana, and will have no title to the electricity proposed to be transmitted by U.S. Steel to Gary Works, Commonwealth will not become a public utility subject to regulation in Indiana. Nor will U.S. Steel, by statutory definition and case law.

---

**3.** I.C. 34–4–10–6 reads

The court may refuse to render or enter a declaratory judgment or decree where such

judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

## B. *U.S. Steel*

The term "utility" is defined in the Public Service Commission Act, as follows:

> The term "utility" as used in this act shall mean ... every plant or equipment within the state used for the ... transmission, delivery, or furnishing of ... light, ... or power, *either directly or indirectly to the public,* .... (Emphasis supplied).

I.C. 8-1-2-1. The transmission facilities U.S. Steel proposes to erect will not furnish "light, ... or power, either directly or indirectly to the public" because it will be the only consumer of the power it proposes to transmit. None will be available for public consumption. Thus, U.S. Steel's utilities under the Act, are *private*, not public.

However, that same section also defines the term "public utility" in the following language

> The term "public utility" as used in this act shall mean and embrace every corporation, ... that now or hereafter may own, operate, manage or control ... any plant or equipment within the state for the ... transmission, delivery or furnishing of ... light, ... or power, ..

*Ibid.* The conspicuous absence of the words "either directly or indirectly to the public" does not create a conflict with the definition of "utility" when our standard rules of statutory construction are applied. However, we need not engage in such an exercise. Our Supreme Court has clearly explained when a business and its utilities are *private* and when they are public.

In a declaratory judgment action brought to test the constitutional validity of the Off-Street Parking Act, our Supreme Court, per Arterburn, J. (later C.J.), exhaustively discussed the question of when an enterprise becomes a "public" as opposed to private business. The opinion tracked this concept from its common law

origins to the present. Justice Arterburn said

> In the earlier days mills, inns, ferries, warehouses, livery stables and other like businesses were classified as a public calling or as "affected with a public interest", by reason of economic necessity. The newer fine-spun creations of this age are interwoven with the dead fabric of the past, yet the same basic principles apply. It could logically be said that parking garages today fall within the category of warehouses, inns and livery stables, originally. The first test of a public calling or "business affected with a public interest" was that of economic necessity. 75 Univ.Penn.L.Rev. 411;[4] *Munn v. State of Illinois*, 1876, 94 U.S. [4 OTTO] 113, 24 L.Ed. 77; *Hockett v. State*, 1886, 105 Ind. 250, 5 N.E. 178....
>
> The early test of a public calling or business was a "holding out" to the public in a particular trade. This was based upon a fundamental concept that business was of two classes: public and private. Thus, we have the term "common" carrier, or "common" innkeeper or "common" smithy as distinguished from one who engaged in the act only casually or on special agreement or contract. This distinction exists today with reference to the obligations of business "affected with a public interest." ...
>
> The common law from the time of the Year Books is replete with cases which placed the duties and responsibilities of serving the public generally upon this limited group of specified businesses. This classification of "public callings" or businesses "affected with a public interest," comprises to a large extent what are known today as public utilities. They are in most cases regulated by the state. Upon the dedication of a business to a public use, it is established that such business is under a common law duty to serve all who apply so long as facilities

---

**4.** Justice Arterburn was the author of this law review article published in 1927. Its title was "The Origin and First Test of Public Callings."

are available, without discrimination. *Portland Natural Gas & Oil Co. v. State ex rel. Keen,* 1893, 135 Ind. 54, 34 N.E. 818, 21 L.R.A. 639; *Hockett v. State,* supra, 1886, 105 Ind. 250, 5 N.E. 178, 73 C.J.S., Public Utilities, § 7, p. 998.

.    .    .    .    .    .

"It is an essential requirement that a business or enterprise must in some way be impressed with a public interest before it may become a public utility. Accordingly, whether the operator of a given business or enterprise is a public utility depends on whether or not the service rendered by it is of a public character and of public consequence and concern, which is a question necessarily dependent on the facts of the particular case." 73 C.J.S., Public Utilities, § 2, p. 991.

*Folz v. City of Indianapolis* (1955), 234 Ind. 656, 130 N.E.2d 650, 654–656, 659. The construction and installation of its transformer and exchange of its electricity in the manner proposed does not impress U.S. Steel's business "with a public interest." Thus, by definition, U.S. Steel will not become a "public utility" subject to the PSCI's jurisdiction and our laws regulating public utilities under the facts before us.

▪ The PSCI, as an administrative agency of the State of Indiana, is a body of limited jurisdiction which derives its authority solely from the Legislature. It thereby possesses only such powers as are conferred on it by statute. *Ky.-Ind. Municipal Power, Ass'n. [KIMPA] v. Public Service Company of Indiana, Inc.* (1979), 181 Ind.App. 639, 393 N.E.2d 776, 780. There is nothing in the PSCI's enabling acts which authorizes it to issue declaratory relief. Thus, the PSCI is without jurisdiction or authority to issue declaratory rulings. *KIMPA,* 393 N.E.2d at 780–781.

In sum, U.S. Steel's business will not be impressed with a public interest if its pro-

posed project is completed. In addition, the PSCI has no jurisdiction or authority to make declaratory rulings in the manner contemplated by the Declaratory Judgments Act. The trial court has exclusive jurisdiction of the subject matter in this case.[5]

Reversed and remanded for further proceedings consistent with this opinion.

YOUNG, P.J., and MILLER, J., concur.

---

5. We wish to point out this opinion deals *only* with the question of subject matter jurisdiction, nothing more.