**FILED**

Jun 13 2023, 8:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT
NETFLIX INC.

George M. Plews
Brett E. Nelson
Joanne R. Sommers
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

Mary Rose Alexander
Robert C. Collins III
Latham & Watkins LLP
Chicago, Illinois

Peter E. Davis
Jean A. Pawlow
Latham & Watkins LLP
Washington, D.C.

ATTORNEYS FOR APPELLANT DIRECTV,
LLC

F. Anthony Paganelli
Joshua R. Lowry
Paganelli Law Group
Indianapolis, Indiana

Adam H. Charnes
Kilpatrick Townsend & Stockton LLP
Dallas, Texas

Ava J. Conger
John P. Jett
Kilpatrick Townsend & Stockton LLP
Atlanta, Georgia

ATTORNEYS FOR APPELLANTS DISH
NETWORK CORP. AND DISH NETWORK
LLC

Offer Korin
Brooke Smith
Stoll Keenon Ogden PLLC

ATTORNEYS FOR APPELLEES

Andrew W. Hull
Michael R. Limrick
Hoover Hull Turner LLP
Indianapolis, Indiana

Steven M. Berezney
Garrett R. Broshuis
Korein Tillery, LLC
St. Louis, Missouri

Indianapolis, Indiana

Jared R. Butcher
Berliner Corcoran & Rowe LLP
Washington, D.C.

Matthew R. Friedman
Pantelis Michalopoulos
Steptoe & Johnson LLP
Washington, D.C.

ATTORNEYS FOR APPELLANTS HULU, LLC
AND DISNEY DTC, LLC.

Jason R. Delk
Delk McNally, LLP
Muncie, Indiana

Victor Jih
Wilson Sonsini Goodrich & Rosati
Los Angeles, California

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Netflix, Inc., Disney DTC LLC, Hulu, LLC, DIRECTV, LLC, Dish Network Corp., and Dish Network, L.L.C., | June 13, 2023 |
| | Court of Appeals Case No. 22A-PL-1630 |
| *Appellants-Defendants,* | Appeal from the Marion Superior Court |
| v. | The Honorable Heather A. Welch, Judge |
| City of Fishers, Indiana, City of Indianapolis, Indiana, City of Evansville, Indiana, and City of Valparaiso, Indiana on behalf of themselves and all others similarly situated, | Trial Court Cause No. 49D01-2008-PL-26436 |

*Appellees-Plaintiffs.*

**Opinion by Judge Foley**
Judges Vaidik and Tavitas concur.

**Foley, Judge.**

[1] At issue in this interlocutory appeal is whether new and emerging technologies fit within a statutory scheme enacted prior to the emergence of those technologies. The resolution of this case is determined by whether the Indiana Video Service Franchises Act ("VSF Act") applies to video streaming service providers.

[2] Netflix, Inc., Disney DTC, LLC, Hulu, LLC, DIRECTV, LLC, Dish Network Corp., and Dish Network L.L.C. (collectively herein "streaming services") appeal the trial court's order denying their motions to dismiss. Appellees are four Indiana cities ("four cities") that allege that the streaming services are subject to the requirements of the VSF Act[1] and seek, *inter alia*, a declaratory

---

[1] Indiana Code Chapter 8-1-34.

judgment to that effect. We conclude that the trial court correctly determined that it has authority to hear the case pursuant to the Indiana Declaratory Judgment Act ("IDJA").[2] Nevertheless, on May 4, 2023, the Governor signed into law H.B. 1454, which expressly excluded "video programming accessed via a service that enables users to access content, information, electronic mail, or other services offered over the Internet, including digital audiovisual works (as defined in I.C. 6-2.5-1-16.3)[,]" from the definition of "video service." H.B. 1454 § 123. This amendment to the VSF Act is "retroactive" to July 1, 2006. Given that a dispute centering on whether the streaming services provide "video service" within the meaning of the VSF Act is at the core of this case, and that the trial court's analysis preceded the passage of this new amendment, we remand the case with instructions to vacate the denials of the streaming services' motions to dismiss.

## Facts and Procedural History

The four cities' complaint,[3] filed on August 5, 2020, alleges that the streaming services provide video service in Indiana. The VSF Act requires entities that provide video service in Indiana to obtain a franchise[4] authorizing the

---

[2] Indiana Code Chapter 34-14-1.

[3] The action was temporarily removed to federal court, but both the federal district court and the Seventh Circuit court of appeals declined to exercise jurisdiction on the basis of the comity abstention doctrine and the general "hesitance to interfere with state and municipal fiscal matters . . . ." *City of Fishers, Ind. v. DIRECTV*, 5 F.4th 750, 753 (7th Cir. 2021).

[4] "[A]n initial authorization, or a renewal of an authorization, that . . . is issued by the commission under this chapter after June 30, 2006; and [ ] authorizes the construction or operation of a video service system in a

construction of a video service system.  A video service system is "a system, consisting of a set of transmission paths and associated signal generation, reception, and control equipment, that is designed to provide video service directly to subscribers within a community."  Ind. Code § 8-1-34-15(a).  The VSF Act defines video service as:

> (1) the transmission to subscribers of video programming and other programming service:
>
>> (A) through facilities located at least in part in a public right-of-way; and
>>
>> (B) without regard to the technology used to deliver the video programming or other programming service; and
>
> (2) any subscriber interaction required for the selection or use of the video programming or other programming service.

I.C. § 8-1-34-14.[5]  The four cities allege that the streaming services provide video service via facilities that are located, at least in part, in public rights-of-

---

designated service area in Indiana."  I.C. § 8-1-34-4.  Federal law permits states and local governments to issue franchises in order to regulate and receive compensation for use of the public rights-of-way.  47 U.S.C § 541(a); § 521(3); *see also City of Knoxville v. Netflix, Inc.*, 656 S.W.3d 106, 108 (Tenn. 2022).

[5] As previously noted, this statute was recently amended by H.B. 1454 and the following subsection added:

> (b) The term does not include:
>
>> (1) commercial mobile service (as defined in 47 U.S.C. 332);
>>
>> (2) direct to home satellite service (as defined in 47 U.S.C. 303(v)); or
>>
>> (3) video programming accessed via a service that enables users to access content, information, electronic mail, or other services offered over the Internet, including digital audiovisual works (as defined in IC 6–2.5–1–16.3).

way, and such provisions generate gross revenue.[6]  The streaming services have not obtained a franchise from the Indiana Utilities Regulatory Commission ("IURC"), a failure which the four cities contend is a violation of the VSF Act's requirements.[7]  And, as a result, the streaming services have not paid fees to the four cities which are "units" under the VSF Act.  I.C. § 8-1-34-12.

[4]     The four cities' complaint seeks: (1) a declaration that the VSF Act applies to the streaming services and that they have not complied with its requirements; (2) an accounting for the monies owed by the streaming services to the four cities; (3) an order enjoining the streaming services from providing video service in Indiana until such time as they obtain a franchise and pay the required fees; (4) an order that the streaming services comply with the requirements of the VSF Act and pay any franchise fees owed; and (5) attorney's fees, costs, and expenses associated with the action.

[5]     On December 18, 2020, the streaming services filed various motions to dismiss the four cities' complaint.[8]  The motions to dismiss raised an array of arguments, all of which find their procedural home in one of two claims: (1) the

---

[6] "[A]ll consideration of any kind or nature, including cash, credits, property, and in kind contributions . . . received by a holder from the operation of a video service system in a particular unit in Indiana; and [ ] calculated by the holder under section 23 of this chapter."  I.C. § 8-1-34-5.

[7] I.C. § 8-1-34-16 ("[A] person who seeks to provide video service in Indiana . . . shall file with the commission an application for a franchise.")

[8] DirecTV and Dish Network, and Hulu and Disney filed separate joint motions to dismiss respectively, while Netflix filed its own motion to dismiss.

trial court lacks subject-matter jurisdiction;[9] or (2) the complaint fails to allege a claim upon which relief can be granted.[10] Specifically,[11] the streaming services contended that: (1) the VSF Act does not provide a private cause of action; (2) the VSF Act does not apply to the streaming services; (3) application of the VSF Act would conflict with various federal laws;[12] (4) the trial court should defer to the IURC with respect to whether the VSF Act applies to the streaming services; and (5) the four cities failed to exhaust their administrative remedies prior to filing their complaint.

[6] After amendments to the motions to dismiss, additional motions practice, protracted briefing, and oral argument, the trial court denied all motions to dismiss on January 18, 2022.[13] On February 17, 2022, the streaming services filed a motion for certification for interlocutory appeal, which the trial court granted on June 10, 2022. We accepted jurisdiction pursuant to Indiana Appellate Rule 14 on August 12, 2022.

---

[9] Ind. Trial Rule 12(B)(1).

[10] T.R. 12(B)(6).

[11] For purposes of this appeal, we consolidate and categorize the various arguments made in the multiple motions to dismiss.

[12] The streaming services (with the exception of Dish Network) have largely abandoned these arguments on appeal, and we do not address them. To the extent that the parties do reference federal preemption or constitutional concerns in passing, *see, e.g.* Netflix's Br. pp. 47–49, we need not reach the arguments as we resolve the appeal on other grounds.

[13] The trial court denied multiple motions to reconsider this order.

## Discussion and Decision

[7] We first address the streaming services' contention that the trial court lacks jurisdiction over this case. "'When a trial court is confronted with a motion to dismiss based on Ind. Trial Rule 12(B)(1), the trial court is required to determine whether it has the power to adjudicate the action.'" *Walls v. Markley Enters., Inc.*, 116 N.E.3d 479, 482 (Ind. Ct. App. 2018) (quoting *MHC Surgical Ctr. Assocs., Inc. v. State Off. of Medicaid Pol'y and Plan.*, 699 N.E.2d 306, 308 (Ind. Ct. App. 1998)). "'In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support.'" *Id.* at 482–83 (quoting *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001)). "If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law." *Id.* at 483 (citing *GKN,* 744 N.E.2d at 401). "Under those circumstances no deference is afforded the trial court's conclusion because appellate courts independently, and without the slightest deference to the trial court determinations, evaluate those issues they deem to be questions of law." *Id.* No facts, as of yet, have been presented to the trial court, and, thus, there can be no dispute by the parties with respect to any facts. We therefore review the trial court's decision to deny the motions to dismiss for lack of subject matter jurisdiction de novo.

[8] The streaming services contend that the trial court lacked subject matter jurisdiction for three distinct reasons: (1) the four cities have not exhausted their

administrative remedies;[14] (2) the VSF Act does not provide for a private cause of action; and (3) jurisdiction lies properly with the IURC. The four cities respond that subject matter jurisdiction in this case derives from the IDJA, and that the IURC is not empowered to render the relief they seek.

[9] The streaming services argue that the four cities could have "presented 'information' to the IURC regarding the streaming companies' alleged failure to secure the necessary video service franchise and requested a formal investigation as to whether the streaming companies have violated the VSF Act[,]" or "filed a 'petition' with the IURC seeking an 'order' regarding the streaming companies' franchising obligations that would have triggered judicial review." DirecTV's Br. pp. 41–42. For authority, the streaming services cite various provisions of Title 170 of the Indiana Administrative Code. Crucially, however, we note that the Administrative Code with respect to the IURC governs "the practice and procedure in cases and other matters before the commission arising under the acts of the general assembly *conferring powers upon the commission* . . . ." 170 Ind. Admin. Code 1-1.1-1 (emphasis added). In other words, the General Assembly must first confer upon the IURC the authority to provide the relief sought by the four cities.

---

[14] We dispense with this argument on other grounds, but we note that our Supreme Court has determined that the failure to exhaust administrative remedies does not implicate the question of subject matter jurisdiction. *See First Am. Title Ins. Co. v. Robertson*, 19 N.E.3d 757, 760 (Ind. 2014) ("We summarily affirm that portion of the Court of Appeals opinion holding that the exhaustion of administrative remedies under AOPA is a procedural error and does not implicate the trial court's subject matter jurisdiction.").

[10] The General Assembly has expressly conferred certain authorities upon the IURC. For example, the IURC may "summarily investigate" discriminatory rate changes or inadequate services. I.C. § 8-1-2-58. It may hold formal public hearings on complaints about unreasonable utility rates. I.C. § 8-1-2-54. But the General Assembly has *not* empowered the IURC to determine the scope of its own authority. Here, the four cities seek a declaration that the VSF Act applies to the streaming services. This is a pure question of law, implicating the secondary question of whether the IURC has some authority over the streaming services. Thus, it is a question properly before the courts of this state, and not the IURC. *See Ind. Off. of Util. Consumer Couns. v. Duke Energy Ind., LLC*, 183 N.E.3d 266, 268 (Ind. 2022) ("[B]efore us is a legal question on which we owe the [IURC] no deference."); *see also U.S. Steel Corp. v. N. Ind. Pub. Serv. Co.*, 951 N.E.2d 542, 551 (Ind. Ct. App. 2011) (citing *Town of Chandler v. Ind.–Am. Water Co.*, 892 N.E.2d 1264, 1267–68 (Ind. Ct. App. 2008) ("However, the Commission's interpretation of statutes defining the limits of its jurisdiction is reviewed de novo."), *trans denied*.

[11] "The courts of this state have already concluded that the IURC does not possess the power to make declaratory rulings in the manner contemplated by the Declaratory Judgment Act." *S.E. Ind. Nat. Gas Co. v. Ingram*, 617 N.E.2d 943, 948 (Ind. Ct. App. 1993) (citing *U.S. Steel Corp. v. N. Ind. Pub. Serv. Co.*, 482 N.E.2d 501, 506 (Ind. Ct. App. 1985), *trans. denied*.). "It has not been empowered to enter judgments which determine the parties' rights, status or legal relationship, even when the subject matter of the determination appears to

fall within the IURC's broad grant of authority." *Id*. (citing *Nat'l Rural Utils. Coop. Fin. Corp. v. Pub. Serv. Comm'n of Ind.*, 552 N.E.2d 23, 25 (Ind. 1990)). Accordingly, we agree with the trial court's conclusion that: "[t]here is no explicit procedural requirement in the VSF calling for the Plaintiffs to first seek a determination from the IURC on whether Defendants must apply for a franchise at all." Appellants' App. Vol. II p. 58. The four cities cannot be compelled to exhaust a remedy that does not exist.

[12] We need not visit the streaming services' arguments about whether the VSF Act creates a private right of action. The trial court correctly found that its jurisdiction derived from the IDJA. Indiana Code Section 34-14-1-2 provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

This is precisely the type of relief that the four cities seek: a declaration clarifying the applicability of the VSF Act.

[13] The trial court found that "[a] plain reading of the IDJA clearly contemplates that a party should bring a case to determine the **extent of** a party's rights under a statute in situations where the moving party would be entitled to redress." Appellants' App Vol. II p. 56 (emphasis in the original). We agree. The four cities meet the definition of "person" under Indiana Code Section 34-14-1-13.

Their rights to franchise fees are determined by the VSF Act, and the outcome of this case depends on the statutory construction of the VSF Act. Thus, the four cities meet the requirements of the IDJA, and the trial court properly exercised jurisdiction. *See, e.g.*, *Holcomb v. Bray*, 187 N.E.3d 1268 (Ind. 2022).

[14] Finally, the parties devote significant briefing to the question of whether the VSF Act applies to them. Mindful of our role as a court of review, and of the potentially significant impact on the question represented by H.B. 1454, we remand the remainder of this case to the trial court with instructions to vacate denials of the motions to dismiss and conduct further proceedings consistent with this opinion. *See Guzzo v. Town of St. John*, 131 N.E.3d 179, 180 (Ind. 2019) (remanding in light of intervening, retroactively applicable amendment to pertinent statute).

[15] Affirmed in part and remanded in part.

Vaidik, J., and Tavitas, J., concur.